# O'BRYAN *vs.* O'BRYAN.

1. Upon a petition or bill for divorce, brought by a husband against his wife, charging her with adultery, evidence of her *general good character* is admissible.
2. Where a chancellor directs issues of fact to be made, which are tried by a jury, the finding is to be regarded as verdicts at common law. The supreme court will not disturb them except in a case of clear and improper finding or of misdirection by the court.

ERROR TO COOPER CIRCUIT COURT. (IN CHANCERY.)

STATEMENT OF THE CASE.

This was a bill filed by a husband against his wife, on the 6th of December, 1847, in the

Cooper circuit court, for a divorce upon the ground of adultery. The adulteries are charged to have been committed in Cooper county on various occasions, in the year 1844 and 1847 with Thomas Saunders, John Saunders and Eli Cuthrell. The defendant in her answer denied the charges, and at her instance issues of fact were ordered by the court, made up and tried by a jury at the last March term.

Upon the trial, it appeared that the parties had been married several years, had always resided in Cooper county, and had several children. Cuthrell lived in the neighborhood of the plaintiff in 1844, and was a young man and unmarried. John and Thomas Saunders were married men, and lived in the plaintiff's neighborhood in the year 1847, and previously. In March 1847, the plaintiff went to the State of Arkansas on business, and was absent about six weeks. Upon his return, he enquired of his wife how things had gone during his absence, and was informed by her, among other things that Thomas Saunders had been very kind to her, was her best friend, and that without him, she would have suffered. Shortly after this, the plaintiff's negro woman informed her master, that during his absence, she had on one occasion, caught her mistress and Thomas Saunders together under suspicious circumstances, and that her mistress manifested a great deal of confusion, when discovered. The plaintiff communicated this to his wife, who at first denied the meeting between herself and Saunders; but afterwards upon being confronted by the woman at her own request, confessed all except the embarrassment. The plaintiff, after this, meeting with Saunders, had a quarrel with him on account of his conduct towards his wife, and in the course of the quarrell, Saunders made some charges against her. The plaintiff communicated these charges to his wife, who then told her husband that Saunders had insulted her by proposing illicit intercourse. The plaintiff's suspicions being now excited, he pressed his wife to tell him all that had been done, and she finally confessed having had intercourse with Saunders, during the plaintiff's absence. The plaintiff after being satisfied of his wife's infidelity, ceased co-habiting with her, and finally on the 6th of December, 1847, filed the present bill for a divorce, and a few days afterwards, the defendant voluntarily abandoned her husband's house, and went to her brothers, who resided in the same county.

These facts were disclosed by the testimony of Jordan O'Bryan, the plaintiff's brother, who learned them from the conversations he had with the defendant. The same day the bill was filed and after the plaintiff had told his wife what he had done, she confessed her guilt, in the presence of John L. O'Bryan.

Two witnesses, Caleb O'Bryan and Dixon O'Bryan, prove improper familiarities between the defendant and Thomas Saunders.

One witness, Jordan O. Taylor, proves that the defendant, after her husband's return, met Saunders in company and went to his house, as she had previously done.

Two witnesses, Mrs. L. Elliot and Simon Lewis, also prove improper familiarities between the defendant and Cuthrell, and proximate acts of adultery, although there is no direct proof of the commission of the very fact.

One witness (Elizabeth Saunders,) testified to indecent familiarity on the part of the defendant with John Saunders, during the plaintiff's absence; and John Saunders swore directly to two acts of adultery, that he had committed with the defendant, during her husband's absence in Arkansas.

This was all the plaintiff's evidence. The evidence on the part of the defendant, consisted in the testimony of two or three witnesses against the character of John Saunders as a man of truth: in the testimony of ten or twelve persons in relation to the good character of the defendant as a woman of chastity and general virtue: in the deposition of Thomas Saunders, who denies having committed adultery with the defendant, but testifies to gross familiarities and lewd conversations with her; and finally in an affidavit made by the defendant before a justice of the peace of Cooper county, on the 16th of December 1847, for the purpose of originating a prosecution against Thomas Saunders—that he had committed a rape upon her some time in the previous March or April.

The plaintiff objected to the defendant's evidence in relation to her character, but the court

3

overruled the objection, and allowed the evidence. The jury found all the issues for the defendant; and the plaintiff moved to set aside the verdict and for a new trial because the finding was against the evidence, and on account of the admission of improper testimony.

This was refused, and the complainants bill dismissed, and the cause is now here by writ of error.

## LEONARD and HAYDEN for plaintiff, insist:

1. The verdict is palpably against the evidence. No one who has any knowledge of human nature or is at all conversant with the world, can doubt the defendant's guilt after having heard the proof that was given. Of her guilt with Thomas Saunders, there is the evidence of tne proximate acts, and her own solemn confessions of guilt, made first to her husband in private, and then repeated to him in the presence of his near relations. There is also her own affidavit, swearing directly to the carnal knowledge in March or April, with the poor pretence made for the first time in December, and after the bill was filed, that it was effected by force. No complaint is made when the wrong was done. Upon her husband's return, she utters in his ears, words of praise in favor of the man who has ravished her. She meets him in company, and even goes to his own house as she had previously done. At last after all this, when the bill is filed, after the lapse of nine months, the poor excuse of a rape is thought of, and sworn to, and then she takes her ravisher's deposition, and when he denies all carnal knowledge of her, the prosecution is at an end, and the wrong done is left to go unpunished. Of her guilt with John Saunders, there is the evidence of her indecent familiarity with him, and his own oath swearing unequivocally to two acts of adultery that he had committed with her, a fact concealed from all till it is drawn out of him by a judicial examination; and then told in such a manner and with such minuteness of circumstances as to leave no doubt of its truth. Even in actions at law, where the verdict is palpably against the evidence, the rule of this court is to reverse the judgment and order a new trial. Hartt vs. Leavenworth; 11 Mo. Rep. 630.

But in equity new trials in feigned issues, are awarded in cases where they would be refused at law. The chancellor weighs the evidence, even nicely and grants a new trial, if the verdict is unsatisfactory to him. State vs. Mabbot; 2 ves. sen. 552; Lord Talconberg vs. Pierce; 1 Ambler 210; Cleeve vs. Gascoigne, 1 Amb. 323; Williams vs. Williams, 4 Eng. Ecles. Rep. 415; Ostley vs. Ostley, 3, Eng. Ecles. Rep. 305, 306; Grant vs. Grant 7 Eng. Ecles. Rep. 16.

2. The defendant's good character, was clearly inadmissible in evidence upon the trial of these issues. In direct public prosecutions for crimes, and in civil cases, when the party's character is put in issue by the suit, it may be given in evidence. Here, however, the party's character was not in issue, in the technical sense in which the term is used, and there is no ground whatever, it is believed, for allowing the evidence. 2 Phillips Ev. with Corven and Hill's notes, 456, 457 and cases there cited; 2 Stark. Ev. 365, title "character;" Atty. General vs. Bowman; 2 Boz. and Pull. 532; Humphrey vs. Humphrey, 7 Conn. R. 116; Fowler and others vs. Œtna Insurance Co.; 6 Corven's Rep. 673, Andersons ex'rs. vs. Long; 10 Seargt. and Rawl. 61.

## ADAMS, STUART and MILLER for defendant, insist:

1. The verdict must stand unless there be a glaring deficiency in the evidence.

2. It is the province of the jury to weigh the testimony, and though the court might not have found the same verdict, it cannot for this reason be set aside. Campbell & Mason vs. Wood, 6 Mo. 218; Todd & c. vs. Boone county, 8 Mo. 437; Tiffany vs. Foster, 8 Mo. Rep. 644; Fulkerson vs. Bollinger, 9 Mo. Rep. 338; Watts vs. Douglass, 10 Mo. 676.

3. In this case, the weight of evidence is clearly with the verdict, and in fact it would have been an outrage to have found otherwise.

Judge RYLAND delivered the opinion of the court.

From the above statement, two points present themselves, for the adjudication of this court.

The first is the admission of the evidence of the defendant's good character: and the second, the refusal of the Court, to grant a new trial. If either of these points be ruled for the complainant, this case will have to be remanded.

It is a general rule, that evidence of a general character is not admissible in civil suits: but to this general rule, there are many exceptions. Greenleaf in his treatise on evidence, vol. 1, sec. 54, says: "In civil cases such evidence is not admitted, unless the nature of the action involves the general character of the party, or goes directly to affect it." "And generally in actions of tort, whenever the defendant is charged with fraud, from mere circumstances, evidence of his general good character, is admissible to repel it—so also in criminal prosecutions the charge of a rape, or an assault with intent to commit a rape, is considered as involving, not only the general character of the prosecutrix for chastity, but the particular fact of her previous criminal connexion with the prisoner." "And in all cases where evidence is admitted touching the general character of the party, it ought manifestly to have reference to the nature of the charge against him."

There is no doubt, that in criminal prosecutions, the general good character of the defendant, is legitimate evidence. Formerly, this kind of evidence was allowed to defendants in capital cases only; but this rule has been so much relaxed in modern practice, as to admit such evidence generally in all criminal prosecutions.

The rules of evidence have their foundation in plain common sense. They were adopted as the means of eliciting the truth; of unfolding and bringing to light the facts connected and involved in the various transactions of life, which might become the subjects of judicial investigation; as well as to afford facilities to the legal enquirer, in his often obscure and difficult searches to find the motive and the will which prompt and produce such transactions. In the nature of things, it is impossible to establish and fix any number of uniform and general rules, which might not bear oppressively severe on some individual cases. Hence the great number of exceptions to be found to these general rules. I know of no situation, in which in a civil suit, a defendant can be placed, where gen-

eral good character can be of more importance to her, than in a proceeding for a divorce, upon the charge of infidelity to her husband.

The charge of adultery, involves directly the character of the defendant. It partakes deeply of the nature of a criminal proceeding. It is highly penal in its effects. Convict the defendant of the charge, and the law deprives her of her property, of her children, of all that is dear to her, and turns her as an outcast upon the world, a miserable and degraded being. The only defence to such a charge, especially if it be false may be her good, her spotless character: deprive her of the right to offer that before the jury, and the consequence will be, that to charge and to convict, will be almost convertable terms. In the case of Gregory vs. Thomas; 2 Bibb. 286, which was an action for a malicious prosecution, the defendant justified, by pleading what causes and grounds he had to prosecute the plaintiff: and on the trial, the circuit court permitted the defendant to prove any particular charge or imputation of theft of any kind, which had been committed by the plaintiff at any period of his life, though unconnected in circumstances with any matter of fact specially alleged in the pleadings. The court of appeals reversed the judgment, stating that the court below ought not to have permitted the enquiry to have extended further, than the plaintiff's general character. In the case of Humphrey vs. Humphrey, 7 Conn. Rep. 116, which was a petition for a divorce, the cause as signed was the defendant's adultery; the court below admitted the defendant to give evidence of her general good character; but the supreme court reversed the judgment of the court below, for this reason, Judge Peters dissenting: This decision of Humphrey vs. Humphrey was afterwards cited by the supreme court of Alabama, see Ward & Thompson vs. Herndon, 5 Porter 382. In this last case, the court uses the language of chief justice Tilghman, in the case of Anderson's executors vs. Long and others, 10 Serg. and Ran. 61, as follows: " But putting character in issue is a technical expression, and confined to certain actions from the *notice* of which, the character of the parties, or some of them is of particular importance." "But it never has been supposed that character is put in issue merely by the charge of fraud, made by one party against another." In the above quotation from chief justice Tilghman, I have no doubt the word *notice* is put by mistake for *nature*.

In actions of crim. con. slander, malicious prosecution, the general character is given in evidence, in order to enable the jury to place a proper estimate thereon, in damages in dollars and cents. In cases like the one now before the court, although the jury do not assess damages,

yet, by their verdict, they can affect the character of the defendant, in a most important manner. Their verdict does not estimate, does not value the character; but it may strip it of all that is dear and leave it a blighted withered object, for "bitter scorn and lasting infamy." This doctrine is tinctured with that absurdity, which teaches us to take care of the shadow, however, we neglect the substance. Viewing this proceeding, therefore, as a pure and unmixed civil one, I am satisfied, that every consideration, every inducement, which have heretofore permitted evidence of general character, to be given in cases of crim. con. slander, malicious prosecution, should permit the same evidence in a petition or bill for a divorce, where the charge is adultery. But I am warranted by authority in considering this case as partaking of the nature of a criminal proceeding. The supreme court of Pennsylvania, in the case of Ganat vs. Ganat, which was a libel for a divorce, 4 Yeates 244, treats the proceeding as a criminal one: and chief justice Gibbon, in the case of Matchin vs. Matchin, 6 Bars. Rep. 336, says "a libel for a divorce is said to partake of the nature of a criminal proceeding." I am free to declare therefore, upon a full consideration of the cases and authorities cited, that evidence of general good character, in a proceeding by petition, or bill in chancery, charging the defendant with the crime of adultery, should be admitted by the courts of this State. Such evidence comes fully and completely within the exception above cited from Greenleaf. By permitting the defendant to give proof of general good character for chastity, the complainant cannot be injured. He has the privilege of rebutting, by the same kind of evidence; but deprive the defendant of this privilege, and irreparable injury may follow. Let us look at the consequences which may result from the doctrine contended for by the complainant's counsel. A virtuous woman may be falsely charged, and the same villany which could fabricate the charge, could accompany it with such "mode and circumstance" as to leave the defendant no power, from extraneous circumstances, to disprove it. She must rely upon her good name: her only hope of safety, is in that homage which the wise and good invaribly and involuntarily pay to virtue under suffering and misfortune. I am unwilling to aid or assist in depriving her of this humble privilege, which is allowed to the defendant, in a criminal prosecution for petit larceny. I find no error therefore on this point.

I will now consider the second point, the overruling the motion for a new trial.

By the statute concerning "Practice at Law," article VII, sec. 3,

only one new trial shall be allowed to either party, except, first, "where the triers of the fact shall have erred in a matter of law:" secondly, "where the jury shall be guilty of misbehavior."

By the statute concerning "Practice in Chancery," article III, sec. 9, "the court may award a new trial of any issue upon good cause shown, but not more than one new trial of the same issue, shall be granted to any one party." From the great resemblance these statutes bear to each other, on the subject of new trials of issues, I am inclined to think that the practice of this court should be the same, as regards them. In appeals from the decisions of the circuit courts in chancery cases, this court examines all the evidence, looks into the facts of the case and makes such an order and decree as we think the court below should have made. But in the cases where issues of fact have been made up, under the direction of the chancellor, and tried between the parties, we look upon the finding of the jury, upon such issues, as verdicts at common law; and when the chancellor, before whom these issues have been tried, upon motion refuses to have them tried anew, by setting aside the first finding, I must see a clear and obvious case of improper finding by the triers, or of misdirection by the court, before I will interfere. In this case, now before the court, I am unable to see any good reason, why this court should depart from its former course of practice and decision in regard to new trials after verdict of the jury at common law. Here were issues of fact made up and tried before a jury, under the eye of the chancellor. A motion was made to grant a new trial, the chancellor overrulled it, thereby declaring his satisfaction with the finding of the jury; at the same time negativing the idea that there was, in his estimation *good cause* for his interference with such finding. This court is not called on to say whether it would have found the same verdict or not—whether it is satisfied with the verdict or not. The jury was the proper tribunal to try the issues. Before the jury the witnesses were produced face to face. In all probability the jury knew all the witnesses and could see the manner of each witness in relating his testimony; could put faith and credit to such witnesses as the jury supposed deserved them, and pass over such as in their opinion, were not entitled to credence. There was testimony on both sides of these issues; and the jury having found their verdict. I am unwilling to disturb it. The decree of the court below, is therefore affirmed.

Concurred in.                                      JAS. H. BIRCH.