S. F. BLACKWELL, Respondent, *v.* C. W. and D. BAILY, Appellants.

### February 28, 1876.

1. When articles of personal property are left by their owner in the hands of another, or subject to his control, with instructions as to their disposition, although the latter may decline the trust altogether, yet, if he accepts it, he will be responsible for a loss of the property caused or negligently permitted by him.

2. No other error appearing, a judgment will not be reversed because an incompetent witness was permitted to testify to a fact which was also proved by a competent witness.

3. A party at whose instance an objectionable instruction was given cannot complain of its supposed inconsistency with a proper instruction given for the adverse party.

APPEAL from the St. Louis Circuit Court.

*Affirmed.*

*G. M. Stewart*, for appellant.

*L. B. Beach*, for respondent, cited: 2 Ph. on Ev. 224; Chouteau *v.* Steamboat St. Anthony, 11 Mo. 226; 2 Greenl. on Ev. 264; Koch *v.* Branch, 44 Mo. 542; 3 Stark. on Ev. 1492; O'Donohue *v.* Cosby, 22 Mo. 393; 1 Chitty's Pl. 154; Glasby *v.* Prewitt, 26 Mo. 121; Henderson *v.* Skin-

ner, 13 Mo. 70; Reynolds *v.* Schuler, 5 Cow. 323; Webstern *v.* Weylman, 11 Mo. 428; Polk's Admr. *v.* Allen, 19 Mo. 467; Carter *v.* Feland, 17 Mo. 383; Robinson *v.* United Ins. Co., 1 Johns. 592; Lattimer *v.* Wheeler, 1 Keys, 468; Boyce *v.* Brockway, 31 N. Y. 490; Kerr *v.* Mount, 28 N. Y. 659; Morgan *v.* Gregg, 46 Barb. 183; Hicke *v.* Cleveland, 39 Barb. 573; Person *v.* Civer, How. Pr. 432; Tate *v.* Bancroft, 1 Mo. 163; Wear *v.* McCorkle, 1 Mo. 588; Wathen *v.* English, 1 Mo. 746; Orth *v.* Dorschlein, 32 Mo. 366; Swearingen *v.* Orne, 40 Mo. 168; Wag. Stat. 1068, sec. 32; Garesché *v.* Piquenot, 17 Mo. 310.

GANTT, P. J., delivered the opinion of the court.

This case was originally commenced before a justice of the peace. The complaint charged the defendants with the conversion of certain personal property, of the value of $100, belonging to plaintiff. By the bill of exceptions in the Circuit Court, to which defendants appealed after a verdict and judgment against them in the justice's court, it appeared that defendants were real estate agents; that plaintiff occupied a house on Broadway under charge of defendants; that in June, 1871, wishing to leave the premises, he sent the key to defendants, with the message that a small balance of rent by him owing could be had by their sending to him, on Morgan street, where plaintiff also wished to see them, to arrange for the storing of certain property by him left in the building on Broadway, the same of which the conversion is charged in this suit; that defendants received the key, saying "all right;" that they did not call on plaintiff, nor he on them, and that plaintiff, on looking after his property in September, 1871, found that it had all disappeared, and further found that defendants had leased the building vacated by plaintiff to a person named Amspaugh; and that they had told Amspaugh that he might have the property in the building in consideration of making certain repairs thereto. The wife of plaintiff testified that she had taken the key to defendants, with the

message of her husband, in June, 1871; that David Baily, one of the defendants, replied, "All right, he would see about it;" and that, at the trial in the justice's court, she heard David Baily testify that he told Amspaugh he could have the property for repairing the building. To this evidence of the wife, defendants excepted. The court overruled a demurrer to the evidence, and defendants produced as a witness David Baily, who testified that plaintiff's wife brought him the key of the building, in June, 1871; that she told him that plaintiff had left the building; that, if witness would call on him, he would pay the balance of the rent due; that she said nothing of the property left in the building, and witness never knew of it; that he did not give plaintiff permission to leave his property in the building; that afterwards, when Amspaugh asked witness if he might use some old stuff remaining in the building, and promised in consideration of it to do some repairs, witness told him to use the property he found there, supposing it to be some abandoned and worthless stuff left by outgoing tenants.

Mr. and Mrs. Amspaugh testified to the effect that, when they went into the building, they found there, and reported to defendants, certain property, and offered, if defendants would give the same to them, they would make certain repairs to the building; that defendants consented to this, and Amspaugh partly consumed and partly sold the property; that it was of small value. Mrs. Amspaugh testified that she told Baily what kind of property was in the house, and he told her to use and consume it.

This was all the evidence, and the court gave the two following instructions.

For the plaintiff:

"The court instructs the jury that if they find from the evidence that the defendants had possession and charge of the property described in the plaintiff's petition, and that said property belonged to plaintiff, and if the jury further

find that defendants wrongfully converted said property to their own use, or disposed of the same without plaintiff's consent, then they must find for the plaintiff, and assess the damages at such sum as they find that said property was actually worth; and may allow 6 per cent. interest from the time of the conversion."

The defendants excepted, and asked the following instruction, which the court also gave:

"The jury are instructed that there is no evidence in this case showing any agreement of defendants to store the goods sued for in this case for plaintiff; and unless the jury find from the evidence that they knew the property was in the building on Broadway at the date they rented it to Mr. Amspaugh, and knew it belonged to plaintiff when they gave Mr. Amspaugh permission to use it, they will find for defendants."

The jury found a verdict, on November 3, 1873, for plaintiff, in the sum of $112.89. Plaintiff remitted $12.89, and judgment was given for $100.

1. We see no cause for disturbing this judgment. There was, to be sure, singular carelessness on the part of plaintiff and defendants, but the one did not excuse the other. It was a very cool proceeding on the part of plaintiff, when vacating premises on which he owed a small balance of rent, to send word to his landlord's agents that, by visiting him at a designated spot, they could get this balance and make an arrangement with him for storing some furniture which, for the present, he had left in the vacated building. Defendants deny that they received this message. But, unless they neglected their duty very grossly, they visited and inspected the vacated premises and observed this property; and they must have known that it was there, and that it belonged to the last tenant, unless, indeed, they were so remiss and careless that they paid no attention whatever to the condition of the property in their charge. Their notice was pointedly called to it a short time after the plaintiff had left.

the building. They seem to have given the matter no attention, and acquiesced in the proposal of Amspaugh to let him have the articles in consideration of his making certain repairs. If defendants, during all this time, refused to take the trouble of inspecting the property in their charge, they must take the consequences of their neglect. Though Amspaugh might have been sued jointly with them for the conversion of the property, it was not necessary to join him as defendant; and their participation in the unlawful conversion sufficiently appears.

2. It is objected that the testimony of Mrs. Blackwell. was inadmissible. It is not worth while to pause on this objection. The error, if it was error, was clearly harmless. The objection is pointed at what she said of David Baily's statement in the justice's court, that he had authorized Amspaugh to dispose of the property of plaintiff; and the fact, thus stated, is proved by Baily himself, as well as by Mr. and Mrs. Amspaugh. The judgment will not be reversed for this reason.

3. The instruction given for the plaintiff is a correct exposition of the law, and is founded on the evidence in the case.

4. We can hardly say as much for the instruction asked by the defendants and given by the court. We think the learned judge who tried the cause was surprised into an inaccuracy when he told the jury that, unless at the time when defendants leased the building to Amspaugh they knew that plaintiff's property was in the building, they must find for defendants. If they made this discovery on the following day, and then proceeded, either by themselves or jointly with Amspaugh, to convert it, it is not easy to see that they would escape liability. But this instruction merely gave the defendants a chance of escape to which they were not legally entitled. They cannot complain of it, and plaintiff does not.

5. It is said that this instruction is inconsistent with that

given for the plaintiff. If this were so, the instruction for plaintiff being correct, defendants can have no advantage in this court from the conflict. It may have aided, or tended to aid, them in the Circuit Court, but that is all past. We do not perceive the conflict. We see no evidence of any contract between plaintiff and defendants for the storing of the goods of the former. But, nevertheless, as defendants had possession and charge of the house in which they were, there is no impropriety in considering them as having possession and charge of the goods. The expression is rather loose; but we cannot perceive that defendants could have been injured by it. The other judges concurring, the judgment is affirmed.