FRED. H. MILLER, Respondent, *v.* CLARA J. MILLER, Appellant.

December 4, 1883.

1. DIVORCE — WITNESSES. — In an action for divorce the parties are not competent witnesses as to words spoken by one to the other while they were alone.

2. —— PRACTICE. —The admission of incompetent testimony which is merely cumulative and which can not prejudice the appellant, is not cause for the reversal of a decree of divorce.

3. —— EVIDENCE. — That a witness is permitted to testify as to the plaintiff's character in respect of that wherein it was not attacked, may not furnish ground for a reversal.

4. —— PLEADING AND PROOF. — A defendant in a divorce proceeding can not prove indignities offered by the plaintiff unless they are pleaded.

5. PRACTICE — NEW TRIAL. — It is not an abuse of discretion to refuse a new trial asked because counsel refused to examine witnesses in attendance and whose testimony the client requested him to take.

6. —— DIVORCE. — Appellate courts will, in divorce proceedings, weigh the evidence taken at the trial, but will not reverse unless the decree is manifestly for the wrong party or clearly against the weight of the evidence.

APPEAL from the St. Louis Circuit Court, BOYLE, J
*Affirmed.*

A. J. P. GARESCHÉ, for the appellant.

R. HIRZEL, J. M. & C. H. KRUM and F. J. DONOVAN, for the respondent.

LEWIS, P. J., delivered the opinion of the court.

This is a suit for divorce, upon the ground that the defendant has offered such indignities to the plaintiff as rendered his condition intolerable. The circuit court decreed for the plaintiff.

When the cause was called for trial, the defendant objected to any hearing thereof, because the plaintiff was in arrear to the amount of $15 on an order for alimony *pendente*

*lite.* An exception was saved to the overruling of the the objection. No authority is shown in support of such an objection, and we can conceive of no reason why it should have been sustained.

The testimony tended to show that the defendant was in the constant habit of assailing the plaintiff with vile and abusive language, applying to him the most revolting epithets, and accusing him of having committed adultery with various women, including his step-daughters and his own sisters. The defendant, as a witness, denied having used the expressions alleged, except as to the general charge of adultery, which she declared was true. The plaintiff, as a witness in his own behalf, was permitted, against the defendant's objection, to describe his wife's often repeated abusive language to him, at times when they were alone. This is assigned for error.

In the case of *Vogel* v. *Vogel* (13 Mo. App. 588), recently decided by this court, we held, on the authority of *Moore* v. *Moore* (51 Mo. 118), and *Buck* v. *Ashbrook*, (51 Mo. 539), that private communications between husband and wife can not, in Missouri, be testified to by either. Were the question one of first impression we might, in interpreting the rule by its history, its reason, and its policy, be inclined to make a distinction in its several applications. The fundamental policy of all well ordered society regards the marriage relation as sacred to the most unreserved confidence between the parties. The intimate union of their interests, and of the elements of social welfare and happiness which either may enjoy, seem to demand that mutual revelations between man and wife shall be not less free from exterior scrutiny than are one's secret communings with himself. A man must be able to impart to his wife the most critical conditions of his affairs, or even his guiltiness of crime, in the full assurance that no process of law can compel her to a violation of his confidence. But a fair application of this reasoning seems to stop at the point of

actual disclosures made between the parties. A vituperative epithet is not such. It has long been settled in Missouri, that charges of infidelity made by the husband without any just cause, are such personal indignities as the statute contemplates in defining the grounds for a divorce. *Lewis* v. *Lewis*, 5 Mo. 278 ; *Hooper* v. *Hooper*, 19 Mo. 355. If it be the policy of social regulations in this state, that the making of such charges may properly eventuate in the dissolution of the marriage tie, the question may be asked, how can that policy be sustained by a rule which, in many cases, closes the mouth of the only person who can testify to the injurious fact, and for whose especial protection the law was made? There is no statutory exclusion of the testimony under consideration. The decision in *Moore* v. *Moore* (51 Mo. 118), is announced as an interpretation of the common-law rule ; a former statute on the subject having been repealed. In Massachusetts, however, there appears to be a different understanding of the rule. A statute prohibited any married person from testifying to " private conversations " between the married parties. In *French* v. *French* (14 Gray, 186), the court said : " This exclusion of testimony is, however, to be strictly confined to mere conversation between the parties, and not to be extended so far as to exclude evidence of everything said by one of the parties in the absence of other persons. Mere abusive language addressed by one party to the other, when they were not in conversation, might be the subject of testimony by the party to whom it was addressed, and *would be competent evidence.*"

But whatever might be our views as to these several propositions, the last ruling of our supreme court, on any question, is the law for us. The language employed in *Moore* v. *Moore* (*supra*), might possibly be regarded as a *dictum* expressing only a generality not pertinent to the real question before the court. But in the later case of *Buck* v.*Ashbrook* (51 Mo. 539), it is distinctly declared that the trial

court committed no error in excluding so much of the testi-
mony of a married woman, as stated that she had protested
to her husband against his use of her name or property in
business. It is here again intimated that the propriety of such
an exclusion results from " the common law still in force
as to her inadmissibility, respecting conversations with her
husband," etc. The case of *Moore* v. *Moore* is referred
to in the same opinion. We have, in these two cases, an
unmistakable expression of what our supreme court under-
stands to be the meaning of the common-law rule. This
is, that no private conversations or communications, of
whatsoever nature, between husband and wife, can be tes-
tified to by either of the parties, as a witness. The mere
protest of a wife against her husband's conduct, on the one
hand, and vituperative language, on the other, are equally
removed, if either be so, from the category of confidential
disclosures. We must, therefore, adhere to our ruling in
*Vogel* v. *Vogel* (13 Mo. App. 588), that while both parties
may testify in a divorce suit, neither should be permitted to
relate private utterances of any description which have
been addressed by the one to the other.

But it does not always follow that a judgment must be
reversed, when incompetent testimony has been admitted in
the trial. If there be other evidence which was competent
and ample to bring about the finding of fact, there are few
cases in which it would not be a gross injustice to disturb
the result. *Bradford* v. *Pearson*, 12 Mo. 71 ; *Ridgway*
v. *Kennedy*, 52 Mo. 24 ; *Blackwell* v. *Baily*, 1 Mo. App.
328. In *Vogel* v. *Vogel*, every accusation, or vituperative
expression used by the defendant, which could have been
construed as a personal indignity within the statute, was
uttered by the plaintiff alone, and appeared not to have
been heard by any other witness. Quarrels had occurred in
the presence of third persons, but the charges of infidelity
and other offences were omitted on those occasions. The
proofs in the present case were very different in this impor-

tant particular.  Gross charges of infidelity, made openly
by the wife against her husband, were detailed by a number
of witnesses, besides the plaintiff.  In fact, the defendant,
both in her answer and in her testimony, admitted the
making of those charges, and averred that they were true.
Her case could not have been unfairly prejudiced by the
plaintiff's testimony to the same effect.  *Blackwell* v.
*Baily*, 1 Mo. App. 328.  The only issue made in this con-
nection was as to the truth of the charges.  On this point
the only incompetent testimony introduced was that of the
defendant, who swore that the plaintiff had confessed to
her his unchastity.

Much of the argument here presented for a reversal is
directed to a discrediting of the plaintiff's testimony, an
impeaching of his conduct in various particulars, as viewed
from the defendant's standpoint, and a general contention
against the finding of the court, as being contrary to the
weight of evidence.  We can not find, in any of these mat-
ters, the least reason for disturbing the judgment.  Whether
the plaintiff's statements were or were not worthy of cre-
dence, is a question which was fairly before the trial court,
and nothing is shown to cast a shadow on the court's deter-
mination of it, unless we are to take the defendant's state-
ments as absolutely true wherever she contradicts the
plaintiff.  In nearly every instance, where these contradic-
tions occur, the plaintiff is corroborated by other witnesses ;
while the witnesses who, from their personal connection with
the facts, should be able to corroborate the defendant,
flatly contradict her.  Her manner of testifying was any-
thing but encouraging to a ready faith in her accuracy of
statement.  General charges against the plaintiff fell glibly
from her lips, but when reduced, by cross-examination, to
specific details, proved little more than the overwrought
suspicions of an imaginative and jealous woman.  We may
dismiss this branch of the inquiry with the remark that,
without admitting that this is a proper case for an appel-

late revision of the weight of evidence on either side, we think there was no rational escape from the conclusion reached by the trial court, upon the facts, as presented.

It is objected that witnesses were erroneously permitted to testify favorably of the plaintiff's general character and reputation. The most prominent feature of the defence was a direct attack upon the plaintiff's moral habits, and his title to social respect. He had a right to meet this with proofs of a good general reputation, as to the vices implied in the charge. *O'Bryan* v. *O'Bryan*, 13 Mo. 16. Some of the witnesses spoke of his general character in other respects. This testimony was irrelevant, and might well have been excluded. But its admission constitutes no ground for a reversal.

The defendant offered to prove that, during the pendency of one or more former suits, which were dismissed, the plaintiff had attempted, by the use of money, to obtain the defendant's consent to a collusive divorce. The testimony was properly excluded. It had no relevancy to any issue in the present case.

The defendant moved for a new trial, with an affidavit alleging that she was surprised, on the trial, by the imputations upon her character for truthfulness; that she had ever borne a spotless reputation outside the circle of her husband's depraved associates, and had no reason to fear such an attack. The affidavit covers nearly ten pages of the record with an account of domestic infelicities and grievances borne by the defendant, which might have been very properly introduced at the trial, but which are wholly out of place where they appear. The affiant says that she will be able to prove all the facts stated, if a new trial be granted, but gives no reason for her failure to prove them in the trial, except that her counsel at the time thought it unnecessary. The application for a new trial is lacking in the first essentials of such a proceeding, upon the grounds stated. The defendant had no right to claim a surprise in

the testimony impeaching her reputation for veracity. The issue was invited by herself when she went upon the stand and contradicted the sworn statements of the plaintiff and other witnesses. It is to be presumed that she intended all this beforehand; since it is not to be supposed that her facts were invented for the occasion, and on the spur of the moment. Having determined on this line of defence, she was bound to anticipate the plaintiff's employment of the methods in common use for its defeat. But, aside from this, her claim of a surprise is thoroughly destroyed by allegations in her affidavit to the effect that she desired, during the trial, to have subpœnas issued for certain witnesses who would vindicate her character for truthfulness, but her counsel refused to have them issued. Also, that there were witnesses present in court who would have done the same, but her counsel refused to call them. She must abide by the acts and omissions of her counsel. It is manifest that the defendant was not prevented from offering the desired testimony, without fault on her part, and after the exercise of all reasonable diligence in an effort to produce it.

An argument is presented, that the plaintiff was not an injured party, and therefore not entitled to a divorce because, in a former suit against the defendant, which was dismissed, he had falsely charged her with adultery, and this fact was shown in evidence in the present case. The defendant's answer sets up no such charge. An affirmative defence must be pleaded in a divorce suit, as well as in any other. The only use which the defendant could have made of the fact stated, would have been in a charge in the nature of a cross-bill, of such indignities offered by the plaintiff to the defendant, as to render her condition intolerable. The answer contains only denials, with an inferential charge of adultery, committed by the plaintiff. As the pleadings stand, there is no necessary inference that the plaintiff's charge in the former suit had any injurious effect upon the defendant's condi-

tion. It may well be, that bad conduct on the part of a plaintiff, not alleged in the pleadings, but proved on the trial, may be of such a character as to show that the plaintiff is not an injured party, and therefore not entitled to a divorce. But this is not the case here. The plaintiff's conduct—consisting of nothing more than an allegation in a petition, inserted by his lawyer, and of which he says he was ignorant at the time—may have had no effect on the sensibilities of the defendant, and so have been utterly harmless as to her. As she does not choose to plead that it was otherwise, we can not judicially put the words in her mouth and determine that it was so.

Upon a careful examination of the record, we find in it no error of which the defendant can justly complain. We see nothing that is entitled to serious consideration, in the point made upon the conduct of the plaintiff's attorney. The letter written by him to the prosecuting attorney, signed with the name of the firm of which he was a member, and asking him to look into a matter of official duty for Mrs. Miller, had no tendency to prove that the writer was her attorney in the present defence, or that he had consulted with her about it. No facts are shown which were not perfectly consistent with good faith in the attorney's representation of the plaintiff in the present proceeding. The judgment is affirmed. All the judges concur.

BAKEWELL, J., delivered the opinion of the court on a rehearing.

The affidavits in support of the motion for a new trial in this case set up various matters of recrimination, some of which, had they been pleaded, and had they been shown on the trial to have occurred after the last of the frequent condonations, of which there was evidence, would have been a bar to plaintiff's suit. They were not pleaded, and were not proved. Appellant alleges in her affidavit, as to these matters of recrimination, that her counsel was advised of them,

but refused or neglected to plead them, and that she had competent witnesses as to these matters, and in rebuttal of testimony introduced by plaintiff to impeach her character, some of whom, though they were in attendance at the trial, her counsel refused to call, and some of whom he neglected or refused to summon, though directed by her to do so, and advised as to what they would testify.

We were of the opinion that, if these allegations were true, they furnished no ground for any interference on our part with the action of the trial court in refusing a new trial.

A motion for rehearing was filed, and in support of it, one of the counsel for the appellant here, who did not represent her in the trial court, filed a brief. We carefully considered this motion, and the brief that accompanied it; and we ordered the case down for rehearing, on the single question whether, considering the character of the litigation, and that a divorce suit is not a mere controversy between private parties, but a proceeding in which the State may be said, in a certain way, to be a third party, a new trial ought to be granted, where it appears that by the misprision of counsel, defendant has lost her opportunity of setting up matter which, if pleaded and proved, ought to bar the divorce, and there is reasonable ground to believe that the decree would have been otherwise, and the divorce denied, but for the misprision of counsel.

This point had not been argued when the cause was submitted here. Nor, though the rehearing has been granted on this ground alone, and that was announced from the bench at the time, have we been aided in any way in our examination by learned counsel for the appellant. Neither of them appeared at the oral argument or by brief.

Although it was urged by counsel for appellant here that the recriminatory matter was omitted by design from her answer, and without fault of counsel, for the reason that defendant did not desire to file a cross-bill because she did not want a divorce, it is plain that there is nothing in that

position. Recrimination is the defence that plaintiff has
done what is ground for divorce. It bars the suit,
whether defendant is guilty or not. It must be alleged
and proved. *Derby* v. *Derby*, 6 C. E. Greene (N. J. Eq.),
60 ; *Reid* v. *Reid*, *Ib*. 331. But, of course, it may be
set up merely as a bar, and need not be set up in a cross-
petition with a prayer for divorce on defendant's side. If
she is an injured party, she is not to be divorced against
her will, merely because, as a bar to her husband's appli-
cation, she sets up matter which, if she were innocent,
would, if she chose so to use and plead it, entitle her to a
divorce. " If the matter of defence appears, either by plain-
tiff's own admissions upon the record, or by the testimony
of his witnesses, the court, of its own motion, will take the
objection at the hearing," says Mr. Bishop. Mar. & Div.
2, sect. 338. But, although, where such matter, or the
fact of condonation, though not pleaded, appears, it is fatal
to plaintiff's claim, it would seem to be contrary to all prin-
ciple to hold that affirmative matter injurious to the charac-
ter of plaintiff, of a recriminatory nature, could be intro-
duced on a trial to which plaintiff was a party, without any
notice to him, or any opportunity to rebut ; and though the
court will exercise a constant watchfulness in the interest of
the commonwealth to prevent the granting of a divorce
through the connivance or collusion of the parties, yet it is
plain that the ordinary rules of pleading and procedure are
not to be disregarded ; and, indeed, our statute is express
that, " like proceedings shall be had in such causes as are
had in other civil suits."

The sum of the matter seems to be well stated by the
learned author before quoted : " The public, which in the
last chapter we saw to be a third party in these suits, does
not ordinarily appear by counsel, and, when without coun-
sel, does not plead. As against this party, when only thus
represented by what is called the conscience of the court,
the plaintiff is equally entitled to his decree on his case

being duly and fully proved." (Unless, of course, and this, the writer has just said, the defendant sets up and proves either connivance, or collusion, or condonation, or recrimination, or the right is lost by lapse of time.) " But this party, unlike the others, never loses a right by laches ; and so, whenever a defence comes out in the evidence, whether alleged or not, it is fatal to the proceeding. A maxim in these suits, therefore, is, that a cause is never concluded as against the judge ; and the court may, and to satisfy its conscience, sometimes does, of its own motion, go into the investigation of facts not contested by pleadings."

But, though the cause may not be concluded against the trial judge by the pleadings and evidence, it must necessarily be concluded against the appellate judge, where he is unable to see that the trial court has erred on the trial or abused its discretion in refusing to grant a new trial. The trial court in a divorce proceeding, might, undoubtedly, on the principle that it represents the third party to the suit, grant a new trial in a divorce proceeding in cases where, were it a mere action between the parties, it might seem oppressive to do so. But we can not see that the court ought to have done so on the affidavits filed in this case. The defendant appears, from her testimony, to be unguarded in her statements made under oath, and the affidavit of defendant in support of her motion is not worded with the caution which should characterize a statement to a court of justice which is to be attested by the dreadful sanction of an appeal to the great Judge of the living and the dead, as to the substantial accuracy of what is written down. The trial judge could form a much better opinion than we can do as to the probability of these allegations that the defendant's case was prejudiced by the not pleading these matters of recrimination, and not introducing the witnesses of whom she speaks. The attorney who represented her upon the trial keeps silence as to these matters, and does not file any affidavit in corroboration of these extraor-

dinary statements; nor has he the character of an undiligent and incompetent or unconscientious practitioner.   Nor are we referred to any case in which a divorce obtained in the trial court has been set aside and a new trial granted on the ground that the counsel for defendant was incompetent and mismanaged her case.

We think that the doctrine that the State is interested and a party to every proceeding for divorce, is not to be interpreted to mean that the appellate courts, upon a surmise that perhaps defendant has a defence, which, if properly pleaded and proved, might have barred the action, are warranted in setting aside a decree of divorce, where the trial court has refused to interfere.

We think that the judgment of the circuit court should be affirmed.   It is so ordered.   Judge LEWIS concurs.   Judge THOMPSON dissents.