HELEN ELIZABETH TEXIER, now known as HELEN ELIZABETH TEXIER NORRENBERNS, v. JEAN B. TEXIER, NELDA BRESSEL SCHUM; WILLIAM M. STOVER, Curator of the Estate of HELEN ELIZABETH TEXIER NORRENBERNS; JEANETTE T. HAYDEN; GEORGE T. HAYDEN, her husband; CHIPPEWA TRUST COMPANY, a Corporation; and THOMAS FRANCIS, Trustee, Defendants, JEAN B. TEXIER and JEANETTE T. HAYDEN, Appellants.—119 S. W. (2d) 778.

Division One, September 17, 1938.*

*NOTE: Opinion filed at May Term, 1938, May 26, 1938; motion for rehearing filed; motion overruled at September Term, September 17, 1938.

*Anderson, Gilbert, Wolfort, Allen & Bierman* for appellant.

*Thos. E. Mulvihill* and *Charles A. Neumann* for respondent.

BRADLEY, C.—This cause has been reassigned. When commenced, plaintiff was a minor, and proceeded by next friend, but became of age and married before trial, and thereafter proceeded in her married name. The cause is in equity to set aside an order of sale and the approval of the sale of real estate, made by the probate court of St. Louis; to cancel the curator's deed made in pursuance of the order; to set aside two deeds made subsequent to the curator's deed; to cancel a $6000 note and deed of trust securing the same; and for an accounting as to defendants, Jean B. Texier and Jeanette T. Hayden. The trial court found in favor of plaintiff, entered interlocutory decree, and appointed a special master in chancery to hear the accounting wing of the case. The special master reported his findings and plaintiff filed certain exceptions. These were sustained in part and overruled in part, and final judgment rendered. On the accounting wing of the case the judgment against defendant, Jean B. Texier, was for $2923.48, and against defendant, Jeanette T. Hayden, for $1535. Defendants, Jean B. Texier and Jeanette T.

Hayden, filed separate motions for new trial, which motions were overruled and they separately appealed.

Appellants filed separate demurrers to the petition. These allege five grounds, but in the briefs no ground is considered except that the petition does not state facts sufficient to constitute a cause of action. It is also claimed that there is no substantial evidence to support the decree rendered. Appellants answered over after the demurrers were overruled, and in this situation we think the petition sufficient.

In order to better understand the situation, we here state the background of this cause. Elizabeth Nagel Texier and defendant, Jean B. Texier, were husband and wife, and on April 7, 1920, they acquired certain real estate, a lot and a two apartment building thereon, at 3866 Utah Place, St. Louis. The deed was made to Mrs. Texier, and on that date they executed their principal note for $6000, due in three years, and six semi-annual interest notes of $180 each, to Elizabeth Goehring (the grantor in the lot deed, as we infer), and secured these notes by a deed of trust on the property purchased. Defendant, Thomas Francis, was trustee in the deed of trust. Plaintiff is the only child of Mrs. Texier and is by a former marriage. Mrs. Texier died February 28, 1921, and plaintiff and her stepfather, after the death of Mrs. Texier, continued to live in the property, and occupied the lower apartment. He rented out the upper apartment and received the rent money, and paid no rent on the apartment he occupied.

May 6, 1921, Texier formally adopted plaintiff. He married again in October, 1921, and thereafter he, his new wife, and plaintiff continued to occupy the lower apartment. He took no steps to have the estate of his deceased wife administered, and took no steps to have a guardian and curator appointed for plaintiff. In the spring of 1923, the tenant occupying the upper apartment heard rumors that Texier did not own the property, and questioned his right to collect the rent. The tenant made inquiries of plaintiff's maternal grandparents and aunt, and these relatives, or some one of them, requested Charles A. Neumann, an attorney, to make an investigation. September 6, 1923, plaintiff's maternal grandfather, Frank Weissler, filed petitions in the probate court for appointment as administrator of the estate of his daughter, Mrs. Texier, deceased, and curator of the estate of plaintiff. He was appointed both as administrator and curator, but while the applications or petitions for appointment were pending, Texier filed suit in the circuit court to have the title to the apartment property vested in him on the theory that he paid the purchase price, and that Mrs. Texier, at the time of her death, held the property in trust for him, and the curator, because of this suit, did not get possession. Texier was unsuccessful in the title suit, and appealed to this court, but dismissed the appeal.

When the $6000 note came due (April 7, 1923), Texier paid it and the last interest note (he had previously paid 5 of the interest notes), and Elizabeth Goehring, the payee, endorsed the $6000 note, without recourse, and delivered it and the deed of trust to him.

October 1, 1926, after plaintiff had arrived at the age of fourteen, defendant Stover, an uncle of the then wife of Texier, was at plaintiff's ostensible request, appointed curator of her property and succeeded as such her grandfather. June 29, 1927, Stover, as curator, filed a petition in the probate court for an order to sell (for reinvestment) the apartment property, and pursuant to the order made, the property was sold at private sale for $2000, and the curator's deed was made to Nelda Bressel (defendant Nelda Bressel Schum), subject to the $6000 deed of trust and interest, and items for taxes, repairs, etc., provided for in the deed of trust, in the event that such expenses were not taken care of by the grantors and the beneficiary should incur the expense for such. Texier, at the time of the probate sale, claimed $11,024.58 in liens against the property under the deed of trust. The curator's deed to Nelda Bressel was acknowledged July 12, 1927, and on July 15th thereafter, Nelda Bressel conveyed the property by warranty deed to Texier for a recited consideration of "one ($1.00) dollar and other valuable consideration." It is conceded that Texier was the real purchaser at the curator's sale.

Plaintiff finished grade, part of high school, and took a business course, all of which were provided by Texier, and in 1928, she secured employment, but turned over her salary (totaling $2900) to him. However, he provided for her, and furnished her spending money, music lessons, etc., and her income seldom exceeded, in any month, the amount he paid out for her. In September, 1929, Texier and his new wife were having trouble (a divorce resulted) and plaintiff, at the suggestion of Texier, went to the Y. W. C. A., and later to the home of Florence Wachholz, an employee of Texier, who represented the Singer Sewing Machine Company. In the summer of 1931, plaintiff consulted Mr. Mulvihill and Mr. Neumann, attorneys, and this cause and *lis pendens* notice were filed September 12, 1931. On the same day that the petition and *lis pendens* notice were filed Texier conveyed, by warranty deed, the apartment property to his daughter, defendant Jeanette T. Hayden, for the recited consideration of "one ($1.00) and other valuable considerations."

Is there substantial evidence to support the decree setting aside the order of sale, report of sale and the approval thereof, the curator's deed, etc.? Plaintiff introduced the $6000 note, the interest notes, and the deed of trust securing these. Also, she introduced the petition and order for sale, the appraisement, the report of sale, the curator's deed to Nelda Bressel, and her deed to Texier, and his deed to his daughter, Jeanette T. Hayden. Plaintiff testified in her own behalf

and called in her behalf (among other witnesses) the appellants, and Curator Stover, and Richard T. Brownrigg, attorney, who represented the curator in the probate court.

The curator's petition for an order to sell, alleged that the minor, plaintiff here, had no property except the apartment property (describing it); that this property was encumbered by a deed of trust; that the deed of trust was given to secure the $6000 note and interest notes above mentioned, and in addition, provided for liens (under the deed of trust) for taxes, insurance and repairs, if these were neglected by the grantors in the deed of trust, and were paid, or made as to the repairs, by the beneficiary. The petition for sale further alleged that the $6000 note and four of the interest notes ($180 each) were "long past due and unpaid, and that interest (8%) had accumulated on these notes; that the taxes for 1920, 1921, and 1922, and insurance premiums had been paid "by the holder" of the deed of trust, and that repairs had been made "by the holder" of the deed of trust; that the total lien for taxes, etc., was $833, and that the total due on the notes was $10,336, "making a sum total due on the said deed of trust of $11,169;" that the equity of the minor in the property was not worth more than $2000, and that if the deed of trust should be foreclosed, "the minor is liable to lose her entire interest" in the property.

The petition further alleged that, in the opinion of the curator, it was best for the minor that her equity in the property be "sold at private sale, for cash, for the best price obtainable, and to reinvest the proceeds." The prayer asked for an order "to sell the equity of the said minor" in the property, "subject to the said deed of trust and the amount due thereon," and that the sale be for a sum not less than $2000.

The petition was filed in the probate court on June 29, 1927, and, on the same day, the order to sell at public or private sale, was made. This order recites that "it appearing to the court after a full examination, on the oath of creditable and disinterested witnesses, that it would be for the benefit of said minor that said real estate" be sold and the proceeds invested, etc. The report of sale shows that the property was sold at private sale on July 1, 1927, for $2000 cash (Texier paid the $2000), and that the sale was subject to the lien of the deed of trust, in the sum of $11,024.58.

Plaintiff testified that she was born March 3, 1912, married June 4, 1932; that her father was Clarence Nagel, who died about June 15, 1917; that her mother married Texier in the latter part of 1917; that, at the time of her mother's death (February 28, 1921), she and her mother and stepfather were living in the lower apartment of the property in question; that after her mother's death, Texier collected the rent on the upper apartment; that she knew nothing about her adoption by her stepfather until shortly before the present suit was

filed; that after her mother's death, she was afraid of her maternal relatives (grandparents, aunt, etc.), because her stepfather "told me different things about them. . . . I was afraid they were going to kidnap me from what he told me. . . . He told me that if I went with my grandparents they would put me in a convent and I would have to become a nun. He told me if I ever visited them they would take me and in that way would get the house. He said it was in mother's name and it was supposed to be mine, and if they got me they would get the house; that they would put me in a convent and they would get the house." Plaintiff, we infer, had no paternal relatives near by.

Plaintiff further testified that her stepfather asked her to see Judge Frey (circuit court judge before whom Texier's unsuccessful title suit was then pending); that she and her stepmother went to see Judge Frey and, at her stepfather's suggestion, she told Judge Frey that the apartment property really belonged to her stepfather; that her mother, before her death, said it did; but, plaintiff testified, her mother never said that. She further testified that she had known Stover, the curator, since his niece married her stepfather, and that she called him uncle; that her stepfather told her, after she was fourteen, "to ask Mr. Stover to be my curator;" that he told her she could choose whomever she wanted, and that she asked Stover to be her curator; that her stepfather (shortly before petition to sell was filed) took her to Mr. Brownrigg and Mr. Leahy (attorneys, but not partners), and that Stover was there; that Leahy was her stepfather's lawyer, and Brownrigg was Stover's lawyer; that during the time Stover was curator, she was not consulted about the property; that she did not know anything about the deed of trust and delinquent taxes; that to the best of her recollection she never saw Judge Holtcamp (probate judge), and was never in the probate court; that she might have told Stover that the apartment property belonged to her stepfather, "because Mr. Texier always led me to believe it was his property."

Texier testified that he "bought and paid for" the $6000 note and deed of trust; that he got them through a named real estate company, agent of Mrs. Goehring; that by "holding the deed of trust I was protecting her (plaintiff's) interest to keep some one else from foreclosing the deed of trust, with the result that it would be sold at a loss to everybody. She had interest in the property. Her interest was the difference between the value of the property and the deed of trust and the notes. I feared that some one would get the deed of trust and foreclose the property. I acquired that deed of trust in 1923, and immediately afterwards I pledged it for $3000, in order to buy that Broadway property. I did not create a danger of foreclosure by pledging that deed of trust, because that deed of trust was my property." He testified that he did not select Stover as curator.

When plaintiff's grandfather applied for letters of administration on the estate of plaintiff's mother, and for the curatorship, he (Texier) employed counsel, and went "down to the probate court," but he did not recall "particularly whether I opposed the appointment of Mr. Weissler;" that he did not seek appointment as administrator of the estate of his deceased wife, "because I was going under the advice of an attorney;" that he did not know why he did not have himself appointed curator; that he was "acting under the advice of an attorney." He testified that his attorney (Leahy) "furnished the curator's attorney (Brownrigg) with the items which made up the statement of the curator about my liens in the curator's report of sale; that he paid no rent for occupying the lower apartment; that he collected the rent for the upper apartment and did not account for it; that the estate owed it to him."

Mr. Brownrigg, attorney for Stover, testified that his recollection was that Mr. Leahy first requested him to act as attorney for the curator; that the curator and plaintiff "came down" and that he said if plaintiff and the curator desired him to act as attorney he would do so, and that plaintiff and the curator asked him to so act. He testified that he prepared or had prepared the petition for sale, order of sale and report of sale; that his best recollection was that he prepared the petition for the removal of the former curator; that he advised the curator "after a full investigation, going over all the circumstances;" and that the statement was made to him by Mr. Leahy "who represented Mr. Texier, that the only estate of this girl consisted of an interest in real estate; that it was encumbered; that she had no personal estate and no money to pay the taxes, and there had been litigation (the title suit) between him and her; that the tenants were not paying the rent. By 'him and her' I mean Mr. Texier and his stepdaughter in this case, and that in order to prevent a foreclosure of the property he (Mr. Leahy) told me that Mr. Texier had paid that note secured by that deed of trust. . . . I had the girl come down, and she didn't know anything about the basis of it, but she told me that Mr. Texier was supporting her and paying her schooling, and I told her what was proposed to be done, and she said whatever Mr. Texier wanted to do was all right with her, and I told her it was a matter that would have to be decided in the probate court, and I made an appointment to have her come down to Judge Holtcamp, and I prepared this petition (to sell). . . . I went down to see Mr. Stover and I told him that was the situation, and that was the best thing to do, provided Judge Holtcamp would make the order, and the girl went with me. She was young, but she was very intelligent—and she corroborated everything and told me what Texier had done for her, and the Judge made an order and three appraisers were appointed;" and that the property was appraised at $12,750.

It appears from the evidence of Mr. Brownrigg that he proceeded, in his advice to the curator, and in the probate court, on the theory that Texier was the owner of the $6000 note, and four of the interest notes, and the deed of trust securing these, and that all these, and the claims of Texier for taxes, repairs and insurance were valid liens against the apartment property by virtue of the terms of the deed of trust.

Plaintiff's case proceeds on the theory that when Texier paid the $6000 note and the interest notes (he being a comaker), these notes and the deed of trust securing them were extinguished, and that since Texier filed no claim against the estate of his deceased wife, or against the curator of the estate of plaintiff, ostensibly in the hands of Stover, he (Texier) had no valid claim, under any theory, against the apartment property, at the time the petition for sale was filed. And it is further claimed by plaintiff that Texier and Stover, and the attorneys (Brownrigg and Leahy) perpetrated a fraud upon the probate court in securing the order of sale and the approval of the report of sale.

"It is well settled in this State that final judgments of probate courts in matters within their jurisdiction are as conclusive as those of courts of general jurisdiction." [Covington v. Chamblin, 156 Mo. 574, 1. c. 587, 57 S. W. 728; Robbins v. Boulware, 190 Mo. 33, 1. c. 43, 88 S. W. 674, 109 Am. St. Rep. 746.] "A judgment cannot be set aside on the ground of fraud unless it is shown that fraud was practiced in the very act of obtaining the judgment; that the fraud went to the manner in which the judgment was procured rather than operating upon matters pertaining to the judgment itself; that the fraud prevented the unsuccessful party from presenting his case or defense; or that the fraud otherwise went to extrinsic, collateral acts or matters not before the court for examination or determination in the suit or proceeding in which the judgment was rendered." [Hockenberry v. Cooper County State Bank, 338 Mo. 31, 1. c. 42, 88 S. W. (2d) 1031, 1. c. 1036, and cases there cited.]

The liens, items and amount of each, claimed by Texier under the deed of trust, according to the report of sale, are as follows:

| | |
|---|---:|
| The principal note | $ 6,000.00 |
| Interest on the $6,000 note from maturity—April 7, 1920 | 2,026.00 |
| The 3rd, 4th, 5th and 6th semiannual interest notes of $180 each, and interest on these from date of payment | 1,006.26 |
| Taxes for 1920, 1921 and 1922, plus interest | 769.72 |
| Insurance | 429.00 |
| Repairs | 833.00 |
| | $11,024.58 |

■ Neither the petition nor the report of sale disclosed *who* held the $6000 note, the interest notes and the deed of trust. Neither did these documents disclose *who* made the repairs, paid taxes, etc. The petition and the report of sale are entirely silent on the subject of Texier's occupancy of the lower apartment (more desirable than the upper) without paying rent, from the death of Mrs. Texier, February 28, 1921, to June 29, 1927, when petition for sale was filed. Neither did these documents disclose that Texier, during the same period, collected and kept the rent ($65 per month) on the upper apartment. The 1920 taxes for which Texier claimed a lien under the deed of trust, were paid by him December 30, 1920, prior to the death of plaintiff's mother. The taxes for 1921, and 1922, were respectively paid by Texier December 16, 1922, and April 27, 1923. So it appears that the 1920 and 1921 taxes were paid *prior* to the time the $6000 note, secured by the deed of trust, was endorsed by Mrs. Goehring and delivered to him, and under no theory could he have had lien claims under the deed of trust for taxes, repairs, etc., before he ever claimed to own the deed of trust. We have not been able to determine from the record just *when* the repairs were made amounting to $833, as stated in the report of sale, and for which Texier was adjudged by the probate court to have a lien under the deed of trust.

The special master, after an extensive hearing, and covering the period from the date of death of plaintiff's mother, February 28, 1921, to November 28, 1934, found that Texier ''was indebted to the plaintiff'' in the sum of $15,780. All this sum was principally for rent and interest thereon owed by him and collected by him. Against this charge, the special master found that Texier was entitled to a credit of $15,556.38, leaving a difference of $223.62, for which difference the special master recommended judgment be entered in the accounting against Texier. And in the credits, the special master included repairs, taxes, etc., and the $6000 note and five of the interest notes, and interest was allowed on all these credits. But, as above stated, the trial chancellor sustained some exceptions filed by plaintiff to the report of the special master, and rendered judgment against Texier on the accounting case for $2923.48. From the special master's report it appears that Texier, at the time the petition for sale was filed, owed for rent collected and for rent he had not paid on the lower apartment around $9000. This is arrived at by figuring the rental at $65 per month on each apartment.

■ We think that this record amply justifies the conclusion that through the connivance of Texier the facts pertaining to credits justly allowable against his lien claims under the deed of trust, were withheld from plaintiff, her curator and the probate court, and that a fraud was perpetrated upon plaintiff and the court. For the purpose, we are assuming, but not deciding, that the $6000 note and deed of trust were not extinguished when Texier acquired possession of them.

Had the petition for order to sell disclosed the amount that Texier owed plaintiff for rents, the probate court could not have found that Texier's liens under the deed of trust amounted to $11,024.58, and could not have found that $2000 was three-fourths of the value of plaintiff's equity. Section 406, Revised Statutes 1929 (Mo. Stat. Ann., sec. 406, p. 257), provides that in no case shall the real estate of a minor "be sold for less than three-fourths of its appraised value." And if such property is sold for less than three-fourths of its appraised value, the sale is void. [Carder v. Culbertson, 100 Mo. 269, 13 S. W. 88; Miller v. Staggs, 266 Mo. 449, 187 S. W. 1159.]

Crow et al. v. Crow-Humphrey, 335 Mo. 636, 73 S. W. (2d) 807, was to enjoin enforcement of a judgment for alimony obtained against an insane defendant in a divorce case. The trial court was not informed of the defendant's insanity and of his incarceration in a sanitarium, "facts then well known to the plaintiff in the divorce action." In the Crow case (335 Mo. 636, 73 S. W. (2d) l. c. 811) it is stated: "Without doubt had the court been apprised of the true situation it would have taken the necessary steps to protect the insane man's rights and to insure a real hearing of the case on its merits. Realizing this, the defendant, plaintiff in the divorce suit, not only did not disclose the facts, but studiously concealed them from the court."

And in the present case, had the probate court "been apprised of the true situation it would (no doubt) have taken the necessary steps to protect" the minor's property.

Hockenberry v. Cooper County State Bank et al., 338 Mo. 31, 88 S. W. (2d) 1031, cited, supra, was to set aside a judgment of the probate court allowing a claim for $82,316.81 against the estate of A. T. Hockenberry, deceased. The plaintiff was the widow and the executrix under the will of the deceased. There was no contest in the probate court on the allowance of the claim, which was based on a guaranty the deceased and other directors of a bank had signed. The executrix, an invalid for many years, consented that the claim might be allowed, but this consent was brought about by her trusted adviser, an officer of the bank in whose favor the claim arose, and who was interested in having the claim allowed. The real facts were not made known to her. The bank officer who was responsible for the executrix consenting to the allowance of the claim (338 Mo. 31, l. c. 42, 88 S. W. (2d) l. c. 1036) "had a very vital interest both individually and as an officer of the State Bank in having a judgment rendered against the Hockenberry estate. It would tend to relieve him of individual liability, and also to insure the continuance, as a going concern, of the bank which employed him. . . . Under such circumstances, it was his duty to make full disclosure of everything he knew about the matter which could have in any way influenced her decision. It is always fraudulent for one, in a position of confidential relationship.

with another to persuade such person, trusting in his counsel, to make a transaction beneficial to him, but against the interest of the person relying upon his advice, without fully disclosing all material facts.''

■ The trial chancellor in the Hockenberry case set aside the allowance and that judgment was affirmed. In the present case, Texier was not only the stepfather of plaintiff, but had adopted her as his daughter. Such relation, under the facts here, placed upon him the duty to make full disclosure to the probate court of everything he knew about his alleged lien claims under the deed of trust, and this he not only did not do, but, as the record strongly reflects, he connived at keeping the real facts from the probate court.

It is true that Mr. Brownrigg testified that he advised the curator ''after a full investigation, going over all the circumstances,'' but it is reasonable to infer from the evidence of Mr. Brownrigg that he did not *know* all ''the circumstances,'' if he proceeded in good faith, and the further inference is reasonable that it was through the activity of Texier that Mr. Brownrigg did not know the facts. We do not mean to imply that a judgment can be set aside because of the mere negligence of counsel for the judgment defendant. Mr. Brownrigg may have been negligent, but if so, there is much more than that in this case. Also, Mr. Brownrigg said that the probate court was ''fully informed.'' In view of the recitals in the petition for sale and in the report of sale as to the amount of Texier's alleged liens under the deed of trust, it is inconceivable that the probate court was ''fully informed.''

We do not think it necessary to deal at length with the claims of defendants, Chippewa Trust Company and Hayden. Texier pledged the $6000 note with the trust company long after it was due, and by no stretch could defendant Hayden be considered an innocent purchaser.

The judgment should be affirmed, and it is so ordered. *Ferguson* and *Hyde, CC.,* concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur.