Bethel v. Bethel.

---

## MARY EFFIE BETHEL, Appellant, v. JOHN J. BETHEL, Respondent.

St. Louis Court of Appeals, March 3, 1914.

1. **DIVORCE: Indignities: Sufficiency of Evidence.** In an action by a wife for divorce on the ground that her husband had been guilty of indignities rendering her condition intolerable and had been guilty of cruel and inhuman treatment, evidence showing mutual altercations between the parties, extending over a considerable time, and aggression and desertion by the wife, *held* sufficient to warrant the dismissal of her petition.

2. ————: **Interest of State.** The State has a special interest in each individual family relation, justifying the court in denying a divorce, when to grant it would violate public policy.

3. ———: Indignities: Mental Irresponsibility. A wife should be denied a divorce on the ground that unfounded charges of infidelity were made against her by her husband, where the latter, at the time the charges were made, was a nervous wreck, whose mental condition was such as to render him unaccountable for his words and actions, since divorces are granted because of the fault of the party and not for his misfortune.

4. ———: ———: Defenses: Pleading. Where a divorce was sought on the ground that the husband had made unfounded charges of infidelity against plaintiff, the fact that he was a nervous wreck and not accountable for his words and actions when he made the charges, was a sufficient reason for denying the wife a divorce, although such defense was not pleaded, since a divorce may be refused on the ground that it would be against justice and public policy to grant it, although the facts upon which such conclusion is predicated are not set out in the pleadings.

5. ———: Violence From Insane Husband. Violence from an insane husband is not legal cruelty.

Appeal from Audrain Circuit Court.—*Hon. James D. Barnett*, Judge.

AFFIRMED.

*Clarence A. Barnes* for appellant.

(1) Divorce is a legal right, the granting or withholding of which is in no way dependent on the discretion of the trial court. Morris v. Morris, 60 Mo. App. 86; Parnell v. Parnell, 2 Phill. 158; Crump v. Morgan, 38 N. C. 91; Deschodt v. Deschodt, 59 Mo. App. 102; Raney v. Raney, 128 Mo. App. 167. (2) When defendant charged his wife with infidelity and adultery he was guilty of extreme cruelty and of offering such indignities to plaintiff as rendered her condition intolerable as a matter of law, and under the evidence in this case, as a matter of law and fact. Allen v. Allen, 31 Mo. 479; Clinton v. Clinton, 60 Mo. App. 296; Tripp v. Tripp, 78 Mo. App. 413; Strahorn v. Strahorn, 82 Mo. App. 580; Lewis v. Lewis, 5 Mo. 278; Rose v. Rose, 129 Mo. App. 175; Sweikert v. Sweikert, 108 Mo. App.

477; Dimmitt v. Dimmitt, 167 Mo. App. 94; Kelly v. Kelly, 18 Nev. 49; Cooper v. Cooper, 99 N. E. 782; Wickland v. Wickland, 126 Pac. 507. (3) The court's finding that the defendant was mentally unaccountable for his slanderous charges of infidelity was the finding of a matter outside of the pleadings and of the record, and of which we believe, there was positively no evidence. Insanity arising after marriage is not a ground for divorce, unless it is so provided by statute. 14 Cyc. 1623; Hamaker v. Hamaker, 18 Ill. 137; Tiffany v. Tiffany, 84 Iowa, 122; Powell v. Powell, 18 Kan. 371; Pile v. Pile, 94 Ky. 308. Insanity is not an exception to the right to divorce on any of the grounds stated in the statutes of Missouri, and can only be made an exception under the guise that the indignities or cruel and barbarous treatment required a sane intention behind them, which we do not believe to be the rule in Missouri. So far as we can learn that point has never been decided in this State, nor do we believe it will be necessary to decide it in the case at bar for the reason that the trial court did not find the defendant to be insane. (4) The trial court not having found the defendant to be insane, but finding him to be a nervous wreck, and of which we do not believe there is any evidence, brings us to the last point in the case, to the effect that eccentricity and mental derangement of the defendant, if any, not amounting to insanity, did not excuse his acts of cruel and barbarous treatment and his rendering the condition of plaintiff intolerable, if the defendant was capable of understanding the nature and consequences of his acts at the time they were committed. McGrady v. McGrady, 48 Mo. App. 668; Avery v. Avery, 33 Kan. 1; Smith v. Smith, 33 N. J. Eq. 458; Duvale v. Duvale, 54 N. J. Eq. 581; Scotland v. Scotland, 4 Wash. 118.

*E. S. Gantt* for respondent.

(1)   In divorce cases there are three parties to the action, the plaintiff, the defendant and the public. Moore v. Moore, 41 Mo. App. 176; McMakin v. Mc-Makin, 68 Mo. App. 57.   The court is not limited by the defenses pleaded in defendant's answer.  If no answer had been filed the plaintiff would have been compelled to make out a case.   Wagner v. Wagner, 6 Mo. App. 572; Owen v. Owen, 48 Mo. App. 208; Nichols v. Nichols, 39 Mo. App. 291.   (2)   If the defendant was a nervous wreck and mentally unaccountable for his words and actions and charges against his wife, she was not entitled to a divorce.   Franklin v. Franklin, 53 Kan. 143; Baker v. Baker, 82 Sud. 156; Wray v. Wray, 19 Ala. 522; Broadstreet v. Broadstreet, 7 Mass. 474; Nichols v. Nichols, 31 Vt. 328; Cohn v. Cohn, 85 Cal. 108; Tiffany v. Tiffany, 84 La. 122; Wertz v. Werts, 43 La. 534; Powell v. Powell, 18 Kan. 371; Sapp v. Sapp, 71 Tex. 348.   (3)  A decree granting or refusing a divorce on evidence which is conflicting will not be disturbed.   Stevenson v. Stevenson, 29 Mo. 95; Endsley v. Endsley, 89 Mo. App. 596; Maget v. Maget, 95 Mo. App. 6; Lawlor v. Lawlor, 76 Mo. App. 637; Schierstein v. Schierstein, 68 Mo. App. 205; Adkins v. Adkins, 63 Mo. App. 351; Griesdieck v. Griesdieck, 56 Mo. App. 94. And this is especially true where the decree refuses the divorce. Ashburn v. Ashburn, 101 Mo. App. 365; Coe v. Coe, 98 Mo. App. 472. (4)  An applicant for divorce must be an innocent and injured party. Morrison v. Morrison, 62 Mo. App. 299; Nagle v. Nagle, 12 Mo. 53.  If both plaintiff and defendant were ill-tempered, harsh and faultfinding a divorce should be denied.   Holschback v. Holschback, 134 Mo. App. 247; Wells v. Wells, 108 Mo. App. 88.

NORTONI, J.—This suit proceeds at the instance of the wife, plaintiff, for divorce.  Besides entering

a general denial to the averments of the petition, the defendant husband filed a cross-bill and prayed that the divorce be granted to him. After hearing the evidence and arguments, the court found the issue for defendant, dismissed plaintiff's petition and dismissed, as well, defendant's cross-bill. From this judgment dismissing her petition, plaintiff alone appeals.

It appears the parties were married in 1883 and had lived together as husband and wife for about twenty-eight years. Seven children were born of the marriage and six of them still live. Both plaintiff and defendant appear to be hard-working people but in moderate circumstances only. During all of the years of their married life they lived on different rented farms. Plaintiff is a large, robust and forceful woman, while defendant appears to be a small and emaciated person and rather timid. The evidence tends to prove the parties got along well enough together until some seven or eight years ago when dissensions arose between them, and it does not appear that the defendant was entirely at fault. The record abounds with evidence to the effect that the wife mistreated the husband, and it abounds with evidence, too, tending to prove that he possessed considerable temper, was quarrelsome and mistreated his wife at times. It appears defendant has been suffering with poor health for some six or eight years and that he is exceedingly nervous. Besides being small of stature and emaciated, defendant is very deaf. This affliction came upon him in early life and has gradually increased during all of the years.

Plaintiff charges that defendant was guilty of such indignities toward her as to render her condition in life intolerable, and also cruel and inhuman treatment of her on his part. The evidence for plaintiff tends to prove that defendant frequently became enraged and threatened to beat her. On several occasions he took a shotgun and kept it with him in his room,

threatening to shoot plaintiff, etc. It is said defendant would curse plaintiff at times, refuse to let her drive his horses and go to church, saying she was "running after" the preacher. Plaintiff says, too, her husband struck her several times with his fist in the mouth and nose and otherwise mistreated her.

On the part of defendant, it is denied that he made these assaults upon plaintiff, and his evidence tends to prove that she assaulted and beat him upon numerous occasions. The evidence amply reveals that plaintiff is the stronger person physically and the more forceful character of the two. She admits having taken a poker away from defendant on the occasion of one quarrel, and it is quite apparent that she was at least equal in point of physical strength to her husband and, no doubt, amply able to care for herself in the ordinary combat which seems frequently to have occurred. One of defendant's witnesses, a hired hand who had lived in the family for some time, says he saw plaintiff slap her husband's "jaws" on several occasions and one time she hit him on the head with a stick of wood. A neighbor, who lived about forty yards distant, testified that on several occasions he heard defendant calling for him to come to the rescue as he was being "beaten up" by his wife. This witness and others, too, testified to seeing defendant with a black eye, a bruised face, and bruises about his arms immediately after such melees had taken place and that defendant had stated to them he received such injuries at the hands of the plaintiff, his wife. The evidence altogether suggests with great force that plaintiff and, indeed, her elder children, had become tired of defendant as a member of the household and was anxious that he should leave. There is evidence, too, and the attendant facts and circumstances seem to corroborate it, tending to prove that plaintiff finally rented the farm on which they lived in her own name and told defendant to leave. At any rate, he left on the first

Bethel v. Bethel.

day of March, the commencement of the new term of lease, and it is quite clear that plaintiff had arranged the matter of renting the farm a few days before. Plaintiff says that defendant left the home on his own account, while he says she ordered him to do so, and, as before said, other facts and circumstances in the record tend to corroborate defendant's theory with respect of this matter. Upon leaving, defendant went to the home of his married daughter, and shortly she or her husband notified him to leave there, which he did. There can be no doubt that upon these facts the court very properly denied plaintiff a divorce and dismissed the bill.

But the question in the case relates to certain charges of infidelity which defendant made concerning his wife. It appears that one Jones, who rented a farm in the neighborhood, boarded with them and defendant became jealous of him. He repeatedly charged his wife with being intimate with Jones and insisted that Jones should leave, but she did not send him away for some time thereafter. It appears, too, the defendant complained with respect to this matter to several of the neighbors, and it is entirely clear that these charges were unfounded, for the plaintiff appears to be an honest and straightforward woman. Because of these charges, plaintiff insists that she is entitled to a divorce, for the court found them to be unfounded. This argument inheres with considerable force and probably should prevail, except for the fact that the court found defendant to be a nervous wreck and mentally unaccountable for the words spoken with respect to such matters. The court expressly found on the evidence that the charges of infidelity made by defendant against his wife were without foundation and that she is an honest, well-meaning woman. But the judgment recites as well, and the court found the fact to be, that the defendant is a nervous wreck and was not accountable for his words and actions and

charges against his wife. There is evidence in the record tending to support this view, though it was not elicited on the part of defendant and that matter was not relied upon as a defense to the action. The family physician, who testified at the instance of plaintiff, said defendant was a nervous wreck and all of the testimony tending to show the impaired and shattered condition of his health, together with his conduct for the last six or eight years, tended to reveal this to be true. Defendant is about ten years older than plaintiff and it appears that he had not only been complaining, but in a highly nervous and irritable state for several years before the separation. Moreover, defendant himself was on the stand in the trial court and testified and while the evidence given by him is not unreasonable, his conduct and demeanor may have suggested to the court symptoms of a shattered mentality which are not in the record before us.

But it is urged no such defense was relied upon in the pleadings and it is therefore not available to defendant for the purpose of defeating plaintiff's right to a divorce on the charges made by him against her. Touching this argument, it is to be said that if the fact that defendant was a nervous wreck and "not accountable for his words and actions and charges against his wife" is a sufficient reason for denying her a divorce on the grounds of such charges, which were not well founded, then it was entirely competent for the court to deny the divorce on that ground though it was not pleaded in the answer. There can be no doubt that the State has a special interest in each individual family relation such as to justify the court in denying its dissolution as by divorce in some circumstances. Touching this matter, Mr. Bishop says, a divorce suit is a civil proceeding, founded on a matrimonial wrong, wherein the married parties are plaintiff and defendant, and the government, or public, occupies without being mentioned in the pleadings the position

of a third party,—resulting in a triangular and other-wise *sui generis* action of tort. [See 2 Bishop, Marriage, Divorce, etc., Sec. 489.] In this view, it is said to be a maxim in divorce suits that a cause is never concluded as against the judge; and the court may, and to satisfy its conscience, sometimes does, of its own motion, go into the investigation of facts not contested by pleadings. [See Miller v. Miller, 14 Mo. App. 418, 428.] So, too, the Supreme Court of California declared in a case where a divorce was prayed and judgment recovered on due service against the defendant for acts of inhuman cruelty,. that it appearing the defendant was about a month subsequent thereto judicially declared of unsound mind, the court should have set the judgment aside at the instance of the guardian on the grounds of both public policy and justice, in the view,-as appears from the cases cited in the opinion, that the State was a party and interested to see that a proper defense was made for an unfortunate lunatic. The theory of that case manifestly is, that it was encumbent upon the court in the interests of the State, as the general guardian of a lunatic, to set aside the judgment of divorce so given before the adjudication of lunacy and permit the defense to be made, as the opinion says, "both upon grounds of public policy and as an act of justice in relieving an unfortunate lunatic of the stigma of 'inhuman cruelty' to her husband." [See Cohn v. Cohn, 85 Calif. 108.] It is entirely clear that the court did not err in denying the divorce on the grounds above stated because of the mere fact that such a defense was not set forth in the pleadings. Touching this matter, it proceded alone on the grounds of public policy and of justice which the State, as the third party to the action, is interested to maintain and enforce.

But it is argued defendant may not be excused for making such charges on the mere grounds of ner-

vousness, and it does not appear that the court found him to be insane. It is true the judgment does not in plain terms pronounce defendant to have been insane, but the finding and conclusion of the court with respect to the subject-matter is tantamount to this. The court found something more than mere nervousness on his part, for the judgment recites that "the court on the evidence as a whole finds defendant to be a nervous wreck and not accountable for his words and actions and charges against his wife." If his mental condition is such as to render him not accountable and this resulted from his being a nervous wreck, then it is obvious the court regarded him as in the category of an insane person. This being true, the court was justified in denying the divorce to plaintiff on the ground that untrue charges concerning infidelity were made against her by defendant, for divorces are granted because of the fault of a party and not for his misfortune. [See Baker v. Baker, 82 Ind. 146.] The divorce is not sought here on the grounds of defendant's insanity and, indeed, our statute does not authorize a divorce because of that fact. The right to a divorce is asserted on the grounds that defendant made such untrue charges against plaintiff, and, of course, this involves the idea of fault on his part as a free moral agent. It is said that insanity is a disease, the danger of the coming whereof and its consequences the wife takes at the marriage; and if it does appear to her peril, the law provides merciful means for her protection through the husband's restraint. Therefore, violence from an insane husband is not legal cruelty. [Wertz v. Wertz, 43 Ia. 534; Powell v. Powell, 18 Kan. 371, 26 Am. Rep. 774; 2 Bishop, Marriage, Divorce, etc., Sec. 1577. See, also, Cohn v. Cohn, 85 Calif. 108; Sapp v. Sapp, 71 Tex. 348.] The principle finds appropriate application here.

The judgment should be affirmed. It is so ordered. *Reynolds, P. J.,* and *Allen, J.,* concur.