SAM KOSLOW v. LAURA TAYLOR, Guardian of EVELYN KOSLOW, a Person of Unsound Mind, Appellant.—No. 40204.—203 S. W. (2d) 433.

Division Two, July 14, 1947.

*Fuller, Fuller & Ely* for appellant.

*Rendlen, White & Rendlen* for respondent.

758

■ WESTHUES, C.—This, a divorce case, was filed in the Hannibal Court of Common Pleas by plaintiff, Sam Koslow, against defendant, Evelyn Koslow. Defendant filed a cross-bill in which she sought a divorce and alimony in the sum of $50,000. General indignities was the principal charge made in the petition as well as in the cross-bill. The trial court entered a decree in plaintiff's favor and the defendant appealed. While the appeal was pending defendant was adjudged to be a person of unsound mind and the cause now stands in the name of the defendant's sister, Laura Taylor, as guardian for the defendant.

This case was hotly and vigorously contested. Both parties were represented by able counsel and the transcript, for a case of this nature, is unusually long, containing in excess of one thousand typewritten pages. We will attempt to state the pertinent facts as briefly as circumstances permit. Plaintiff was born in Russian Poland and immigrated to this country in the year 1907, when he was about eighteen years of age. He soon engaged in business, beginning as a peddler of rugs and later dealing in new and second-hand furniture. He was very successful in a financial way, being worth at the time of the trial approximately $135,000. Plaintiff's principal business operations were conducted in Hannibal, Missouri, however, he had an interest in a merchandise store in St. Louis in the year 1921. It was during that year that he met the defendant and after a courtship of short duration married her on December 1, 1921. Defendant testified that she had been married before to one Jackson and that her first husband died before she married plaintiff. Defendant was about eight years or so younger than plaintiff. She was a gentile and belonged to the Christian church, while plaintiff was a Jew. No children was born of this marriage. In 1930 they adopted a boy about three years of age. He was given a good education and during the

war served in the armed forces. At the time of the trial he was employed in Europe by the United States Government, earning about $2400 a year.

The record reveals that the married life of this couple was not a bed of roses. Much of the trouble was due, we think, to the difference in their mannerisms and in their opinions of what was proper or improper. To illustrate, shortly after the marriage defendant's sister was visiting them. During the evening a package of cigarettes fell from defendant's clothing and plaintiff became very angry on discovering that his wife smoked. He stated he did not intend to marry a "Fatima," packed his clothing and left the home staying away for a number of days. Years later the adopted son was the cause of many quarrels. As we read the record, Mrs. Koslow wanted the boy to be polite and mannerly to such a degree that it irked plaintiff. On one occasion plaintiff left home and remained away several days because, as he testified, she treated the boy so mean and was always scolding him. Later the boy was sent to a military school and on another occasion lived at the Y. M. C. A.. The reason assigned for sending him to the military school and also for his living at the Y. M. C. A. was, as plaintiff testified, that the defendant mistreated the boy. However, the record shows that the boy has made good and is on good terms with both his parents.

Plaintiff and defendant accused each other of many faults. Plaintiff contended that his wife abused him at the home; that she constantly quarreled with him; that she cursed him frequently, calling him vile names, and often referred to him as a Polish Jew. Plaintiff testified he was not offended by that salutation because he was proud of his ancestry, but he objected to the adjectives the defendant used in connection with the salutation. Some of these, as testified to by a number of witnesses, were certainly offensive. Plaintiff also testified that the defendant often belittled the boy by stating that he was from the Ozarks. This court, however, deems that a compliment. The defendant testified that the plaintiff was possessed with an ungovernable temper; that often he would not speak to her for days; that at other times he would curse her and call her vile names. She further stated that plaintiff would become angry, pack his grip and go to a hotel or his place of business and stay for a number of days. These are just a few illustrations of the nature of the charges made by the plaintiff and the defendant against each other. Needless to say that each emphatically denied the accusations made by the other. Plaintiff testified that because of ill-treatment he and the boy received at the hands of the defendant he at times left home and sought relief by staying away. As stated above, it is our firm opinion that the many difficulties this couple experienced were due to the different environment in which each was raised. Plaintiff grew to manhood in Russian Poland, defendant in the City of St. Louis. The difference in their

religion was also a factor. It is safe to say that for such a couple to get along in life each must have due regard for the other's viewpoint. The required patience, charity and forbearance were lacking in plaintiff as well as in the defendant. There was too much obstinacy and self-assertion. The record is filled with charges and counter-charges which need not be recited. Having due regard for the natural tendency of the parties plaintiff and defendant to exaggerate the faults of the other in divorce cases, we hold that neither plaintiff nor the defendant is entitled to a divorce for the alleged indignities we have thus far considered.

The above is a short resume of the life of this couple up to about the year 1944. About the latter part of this year, or early part of 1945, the defendant began to accuse plaintiff of infidelity. She not only made these accusations against plaintiff, but she called the other party, a married woman, by phone and accused her of improper relations with her husband. She also frequently called this woman's mother and her husband charging that plaintiff had been intimate with this woman. Defendant also divulged her accusations to others and after the separation the accusations continued. On one occasion defendant called the police and had them go to plaintiff's hotel charging that her husband had the woman in his room. A search failed to sustain the charge. Defendant testified that these accusations were true and that while hiding in the furnace room of plaintiff's store she had witnessed improper relations between her husband and the woman. She also testified that plaintiff and this woman frequently had meals together at various restaurants in Hannibal, but this was refuted by the owners of the restaurants. She further testified that on one occasion she found a key in her home and that she tried it in a door of the woman's home and that it fit ▮▮▮ the lock. She produced the key at the trial and an experiment during the trial proved that was not true. The evidence justified the trial court's finding that defendant's accusations of plaintiff's infidelity were not true. Defendant's counsel on this appeal do not contend otherwise. In the brief we find the following statements:

"We come now to the matter previously deferred, of the reference to" (name of woman omitted). "It may not be out of place to state here and now frankly, that since the trial of this case, counsel for the defendant are firmly convinced that the defendant was suffering from delusions produced by her mental and physical condition at the time she made these charges, and that the charges are simply not true, although they were sincerely and honestly believed by the defendant to be true when she made them."

. . . .

"Was the defendant, at the time of making the factually untrue accusations of the plaintiff and . . . . , a truly responsible agent,

or were those accusations the product of delusions proceeding from her physical and mental illness? We think the record clearly shows the latter to be true." We will treat the question of insanity later in this opinion.

Defendant, in addition to the charges above enumerated, offered evidence that plaintiff, in the year 1933, had been guilty of infidelity. A witness named C. E. Smith testified that during the year 1933 he and plaintiff were in the City of St. Louis, Missouri, on business; that they had adjoining rooms on the fifth floor of the Lennox Hotel; that on a Sunday night while they were walking near the hotel plaintiff stopped and talked to a woman; that after he left the woman he remarked, "Pretty good looking girl"; and he, the witness, replied, "Yeah." Nothing further was stated at the time. What occurred thereafter; as testified to by Smith, may be briefly related as follows: That night Smith heard a rap on his door and on opening it saw the girl plaintiff had previously spoken to. She stated to the witness: "Honey, here I am," and he replied, "I am not the fellow that was talking to you this evening." However, he admitted the girl to his room, had improper relations with her and paid her $10.00. She then asked which was his partner's room. He showed her plaintiff's room and watched her enter. The next morning Smith rapped on plaintiff's door and when it was opened he saw the girl in bed. Smith further testified that at plaintiff's request he gave him $5.00.

The trial court made a finding of facts which reveals that the court did not believe Smith's testimony. In their brief counsel for the defendant state that the trial court set forth the reasons why Smith's evidence was unworthy of belief. Counsel assert that the court's reason was, that Smith admitted he had had improper relations with the woman and therefore he was unworthy of belief. Counsel further argued that that was not a good and sufficient reason and therefore the evidence should be believed. We have carefully read the trial court's finding of facts. Smith's evidence is fully reviewed therein and we find that the trial court gave a number of reasons for not believing him. The trial court found that Smith was a very willing and eager witness; that his feelings toward plaintiff were not good; that he had not spoken to plaintiff for five years and that they had had differences. In addition to that Smith's story was analyzed, the court pointing out that it did not sound reasonable. For example, the court queried as to why the girl would first go to Smith's room, when he had not spoken to her, and why it was necessary for her to ask for plaintiff's room when plaintiff was alleged to have made the engagement with her. We have read Smith's evidence several times and it does have a number of earmarks of untruthfulness. In addition to what is stated above Smith testified he had never mentioned the incident until after the divorce was filed and that then he brought it to the defendant's attention. In the circumstances we must defer

to the trial court's finding and we may add that we are inclined to believe the story was fabricated.

In defendant's brief it is asserted that if this decree is permitted to stand the defendant will be penniless, since all of the property is in plaintiff's name; that defendant has been a faithful wife for a quarter of a century; that her reputation and character were excellent; that the accusations of infidelity, which the trial court deemed a ground for divorce, were made during the last months previous to the separation while defendant was suffering from delusions produced by her physical and mental condition. Counsel contend that the defendant was not responsible for her actions. All of these matters, with the exception of the question as to the defendant's insanity, were before the trial court. We have considered all of these elements and we must say that this is indeed a difficult case.

 Defendant briefed the question of insanity. Point three of the brief reads as follows:

"Acts committed while one is insane are not grounds for divorce. Nichols v. Nichols, 31 Vt. 328; 73 Am. Dec. 352.".

We may say that there are Missouri cases which so hold. The question of defendant's insanity was not an issue in the trial of this case. No such contention was made. The trial court's finding discloses that the question of insanity was not thought of. If this question was not an issue in the trial of this case then this court cannot decide that question on this appeal. Plaintiff, so far as this record shows, was not a party in the case wherein defendant was adjudged to be insane. We learned that fact from appellant's brief and our records, which show a motion was filed in this court asking for the appointment of a commissioner to hear evidence on the issue of insanity existing at the time the decree was rendered in the circuit court, or that the cause be remanded to the trial court so that the issue of insanity might be adjudicated. The mere fact that the defendant was adjudged insane a short time after the divorce case was tried is not sufficient to upset the decree of divorce. It must be shown that the defendant was insane at the time the acts constituting grounds for divorce were committed. 27 C. J. S. 597, sec. 55 (b), and cases there cited. Also, Bethel v. Bethel, 181 Mo. App. 601, 164 S. W. 682; Crow v. Crow-Humphrey, 335 Mo. 636, 73 S. W. (2d) 807. This court denied the motion for the appointment of a commissioner to hear evidence and also refused to remand the case to the trial court for further hearing. By the denial of that motion this court did not rule on the question of whether the defendant has a legal remedy.

A writ of coram nobis may lie. We cannot in this case decide the question. In the interest of justice, and also taking into account that in divorce cases the public welfare is at stake, we refer counsel to the following authorities. 49 C. J. S. 561, sec. 311; Crow v. Crow-Humphrey, 335 Mo. 636, 73 S. W. (2d) 807, 1. c. 812 (4); Gibson v.

Pollock, 179 Mo. App. 188, 166 S. W. 874, l. c. 877 (2-4); Baker v. Smith's Estate, 18 S. W. (2d) 147; Bethel v. Bethel, 181 Mo. App. 601, 164 S. W. 682. In divorce cases, as will be noticed in the opinions in the above cases, there are three parties, the plaintiff, the defendant and the state, or more accurately stated, the public welfare. In view of the fact that the defendant was adjudged insane within a short time after the decree of divorce was entered, it may be that when the false accusations of infidelity were made the defendant was then insane and not responsible. If that be true, then it is doubtful whether the trial court would have entered a decree of divorce. It seems to us that the charges of infidelity made by the defendant were the principal ground in the court's mind for granting plaintiff a divorce. As said above, we cannot try the issue of insanity in this case. On the record before us there is nothing for us to do but review the issues tried. In the state of the record our findings are in harmony with those of the trial court and therefore the judgment is affirmed. *Bohling and Barrett, CC.,* concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.