Grace NIEDERGERKE (Plaintiff), Respondent,

v.

Harry NIEDERGERKE (Defendant), Appellant.

No. 28813.

St. Louis Court of Appeals.

Missouri.

Sept. 21, 1954.

J. M. Feigenbaum, Sigmund M. Bass, St. Louis, for appellant.

David E. Horn, Robert C. Brinkman, St. Louis, for respondent.

HOUSER, Commissioner.

On August 20, 1951 Grace Niedergerke filed a petition for divorce on the ground of general indignities. Her husband, Harry, filed a general denial. On June 6, 1952 defendant's answer was ordered stricken for refusal of defendant to submit to the taking of depositions. On July 18, 1952 an order of default and inquiry was entered. When the cause came on for hearing on February 10, 1953 defendant's then counsel (not the same attorney who presented the case on appeal) sought appointment as guardian ad litem on the ground that defendant was not of sound mind, did not know right from wrong, and had been mentally incompetent and incapable of taking care of his interests from a legal standpoint since June 6, 1952. Defendant's counsel introduced records showing that defendant had been admitted to Malcolm Bliss Psychopathic Institute on three occasions and that the staff had the "impression" that defendant had numerous delusions and was suffering from paranoid schizophrenia, manic type. The trial judge appointed defendant's counsel as guardian ad litem on the basis of the hospital records and of his previous knowledge of the case. In September, 1952, on an application for a writ of habeas corpus to release defendant from the hospital, the same judge had dismissed the application on the ground that defendant was "not a fit subject to be turned loose on the streets." Defendant's attorney, upon being appointed guardian ad litem, by leave of court filed a previously prepared answer for defendant in the nature of a general denial, coupled with a charge that plaintiff had committed adultery. The guardian ad litem did not incorporate in the answer the affirmative defense of insanity, notwithstanding the guardian ad litem had previously informed the court that he had evidence that defendant "had been insane for many years," and in spite of the fact that he had available documentary evidence that defendant had been suffering from schizophrenia, paranoid type, and insane

delusions, as early as May 18, 1951. The guardian ad litem did not plead insanity as an affirmative defense for the reason that he had entered into a pre-trial agreement or understanding with counsel for plaintiff by the terms of which he agreed not to raise the point by way of defense that defendant had been insane for a number of years; that he would assert only two defenses: a general denial and a charge of adultery, and that in putting on his medical evidence he would not go into the question of defendant's previous mental condition but would confine the evidence to the state of his mind at the present time.

Both in her pleadings and in the presentation of her case on February 10, 1953 plaintiff placed her chief emphasis and reliance upon a series of indignities and acts of cruelty occurring between the dates of May 18 and August 16, 1951. For the purposes of this opinion it is not necessary to relate or characterize these acts except to say that they were of such a serious nature and consequence that they would entitle plaintiff to a divorce, if the innocence of plaintiff and the sanity of defendant were established. At the trial plaintiff appeared, testified personally and offered the testimony of three witnesses in corroboration. Defendant, however, was not present at the trial. On three occasions during the progress of the hearing he unsuccessfully attempted to communicate with the judge by telephone. Defendant's guardian ad litem, acting in his behalf, cross-examined plaintiff's witnesses, but offered no evidence except the hospital records and the testimony of Dr. W. B. Mills, Medical Director of Bliss Psychopathic Hospital. Dr. Mills interpreted the records and findings of the members of his staff but had not personally examined defendant and therefore could not give his own opinion on the question of whether defendant was afflicted with paranoid schizophrenia. Drs. O'Neill and Hudson, whose names appear in the hospital records as the physicians who examined defendant, were not called as witnesses by the guardian ad litem. No effort was made on behalf of defendant to show the effect of schizophrenia on the voluntariness of defendant's acts between May 18 and August 16, 1951, or to show that defendant was not mentally competent prior to May 18, 1951. The foregoing proceedings took place on February 10, 1953. Not having been concluded the trial was recessed until February 17, 1953, at which time plaintiff, belatedly, and apparently as an afterthought in order to avoid the effect of the evidence indicative of defendant's insanity from May 18, 1951 forward, gave evidence of a series of indignities occurring during the earlier period of March 11, 1946 to May 18, 1951, although there was no pleading to support this proof. No effort was made by defendant's guardian ad litem to exclude this evidence on the ground that these facts were outside the scope of the pleadings nor was any evidence offered tending to deny or explain these incidents from the standpoint of defendant. The only effort made on behalf of defendant to substantiate the charge of adultery was the introduction of certain letters admittedly written by plaintiff, some of which were purported love letters directed to the minister of her church, and one of which was a letter to defendant in which plaintiff conceded that defendant had grounds for divorce. Incidentally, plaintiff testified that these letters were written at the dictation of defendant and at the point of a gun.

At the conclusion of the hearing the trial court found the issues for plaintiff, granted her a divorce, awarded her custody of the child, $220 per month alimony, $100 per month child support, and $2,000 attorney's fees. The guardian ad litem filed a motion for new trial which was overruled. He then filed an affidavit of appeal, following which the guardian ad litem by leave of court withdrew as guardian ad litem "at the suggestion and request of defendant." The appeal was perfected and the case briefed and argued by present counsel for defendant.

The sole point raised by defendant on this appeal is that the evidence shows clearly that the acts complained of were committed by defendant at a time when he was suffering from mental aberration or

paranoia, as a consequence of which his conduct was not voluntary; that plaintiff failed to sustain the burden which was upon her to prove that defendant was of sound mind at the time of the commission of the indignities. Plaintiff, relying upon the presumption of sanity, asserts that defendant failed to sustain the burden of proving that he was insane in such a degree as to eliminate the element of wilfulness from his conduct and to deprive him of the ability to differentiate between right and wrong and to render him incapable of willing one or the other.

No evidence was introduced by the guardian ad litem tending to show that the mental aberration with which defendant was afflicted deprived him of the ability to differentiate between right or wrong or incapacitated him from willing the one course or the other. In other words, there was no attempt to establish that by reason of his mental affliction defendant's acts were involuntary. Nor did the guardian at litem explore the question of the mental condition and legal accountability of defendant for the marital derelictions with which he was charged between March 11, 1946 and May 18, 1951.

 From the fact that the court appointed a guardian ad litem for defendant we may assume that as of the date of the trial the trial judge was of the opinion that defendant was not mentally competent to understand, care for and protect his own interests in connection with the litigation. The appointment imposed upon the guardian ad litem the duty of taking all necessary steps reasonably calculated to protect and promote the interests of defendant relating to the litigation. Among other things, it was incumbent upon the guardian ad litem to plead all affirmative defenses available to defendant, including the defense of insanity if substantial evidence of that defense was available. If defendant's conduct was due to an existing insane condition his acts were not indignities upon the basis of which plaintiff could obtain a divorce. Fossett v. Fossett, Mo.App., 243 S.W.2d 625; Dunn v. Dunn, 240 Mo.App.

87, 216 S.W.2d 141; Crow v. Crow-Humphrey, 335 Mo. 636, 73 S.W.2d 807; Bethel v. Bethel, 181 Mo.App. 601, 164 S.W. 682. Whether a spouse charged with marital offenses had the legal capacity to commit an indignity depends upon whether his acts were voluntary or involuntary. Dunn v. Dunn, supra; Bethel v. Bethel, supra. If he knew and understood the nature of his acts, was capable of differentiating between right and wrong and could will the one course or the other, his acts were voluntary and he is to be held legally accountable therefor. On the other hand, if his mental condition was such that he was incapable of wilful and deliberate conduct and could not differentiate between right and wrong with respect to the acts which he committed, his acts were involuntary and he is to be excused from the legal consequences which would follow if he were sane. Smoot, Law of Insanity, § 424; Annotation: Divorce—Insanity as Precluding, 19 A.L.R.2d 144, §§ 3 and 4, pp. 148–155.

 The pre-trial agreement, and the failure of the guardian ad litem to plead or develop the defense of insanity from May 18, 1951 forward, in spite of the fact that the guardian ad litem had evidence that defendant had been insane for years, his failure to produce the doctors who examined defendant, to show the effect of schizophrenia on the voluntariness of defendant's acts, to produce defendant before the court'at the trial, to produce witnesses to testify with respect to the acts of indignities charged against defendant, and to show defendant's mental condition during the period March 11, 1946—May 18, 1951, combine to raise grave doubts whether defendant's rights were safeguarded properly by the guardian ad litem. In view of the obvious restraint imposed upon the guardian ad litem by the pre-trial agreement it is apparent that the question of defendant's sanity during the times in question was not fully explored. The question of defendant's sanity was a concern of the State, as the third party to this action, whether or not the defense of insanity was relied upon in the pleadings. Bethel

v. Bethel, supra, 181 Mo.App. loc. cit. 608, 609, 164 S.W. 682. Remand is a customary procedure in a divorce case where the evidence on a particular issue has not been properly developed at the trial. Pollard v. Pollard, Mo.App., 98 S.W.2d 132; Erlacher v. Erlacher, Mo.App., 145 S.W.2d 974.

In accordance with the duty of the court to afford every protection to the rights of an insane person the Commissioner recommends that the judgment be reversed and the cause remanded for a new trial.

PER CURIAM.

The foregoing opinion of HOUSER, C., is adopted as the opinion of the court.

The judgment of the circuit court is, accordingly, reversed and the cause remanded for a new trial.

RUDDY, Acting Presiding Judge, BENNICK, J., and ROBERT L. ARONSON, Special Judge, concur.