Mary June FUEMMELER, (Plaintiff) Respondent,

v.

Vincent FUEMMELER, (Defendant) Appellant.

No. 31702.

St. Louis Court of Appeals.

Missouri.

July 21, 1964.

Edwards, Wright & Seigfreid, Jerome W. Seigfreid, Mexico, for appellant.

Charles M. Shaw and L. L. Bornschein, Clayton, for respondent.

DOUGLAS W. GREENE, Special Judge.

Plaintiff instituted this action for divorce on December 15, 1962, by the filing of her petition alleging indignities by her husband, claiming that he failed to associate with her, that he was jealous, domineering, and critical, and that he no longer loved her or wanted to live with her; that he had told her she was suffering from an unbalanced mental condition and that such statement was false. The petition further stated that seven children were born of the marriage, six of whom were still in the parental home.

Plaintiff asked for a divorce, care, and custody of the minor children, and support, maintenance, and attorney fees.

Defendant's answer, filed on January 5, 1963, admitted the marriage, birth of the children, and jurisdictional requirements, but denied the balance of plaintiff's petition. Defendant, on the same date, also filed a cross-bill, alleging as indignities that plaintiff had no friends and refused to speak to people, which conduct embarrassed defendant; that plaintiff refused to talk or communicate with defendant for no reason; that she failed and refused to make a home for defendant and their children, and was completely incapable of raising and caring for the children.

Defendant asked for a divorce and care and custody of the minor unmarried children. Plaintiff's reply, filed on January 16, 1963, admitted the separation of the parties, but denied all alleged indignities.

A contested trial of the issues was held on July 2, 1963, and the cause was taken under advisement. On July 19, 1963, the Court entered an order finding the issues against plaintiff on her petition and against defendant on his cross-bill and dismissed both petition and cross-bill with prejudice.

In support of his ruling the trial court filed a "Findings of Fact, Conclusions of Law, and Decree," in which the trial court found that the defendant was the injured and innocent party, and that plaintiff's conduct towards defendant during the marriage had rendered his situation in life intolerable, and was such as would entitle him to a divorce on this cross-bill, were it not for the fact that the evidence revealed, in the trial court's opinion, that plaintiff was mentally ill, and that her conduct to-

wards defendant was a result of such mental illness, and therefore excusable since it was not wilfully or intentionally done in a spirit of hatred or contempt. The trial court also found that because of mental illness, respondent was unable, over a sustained period of time, to avoid her conduct in question toward defendant. Defendant, on July 27, 1963, filed his motion for new trial, which was overruled by the trial court on August 2, 1963. From this ruling defendant has appealed.

In his brief and argument, appellant has presented only two assignments of error. All other assignments of error, being neither briefed nor argued, were therefore abandoned. Ayres v. Keith, Mo., 355 S.W.2d 914; Moore v. Rone, Mo.App., 355 S.W.2d 398.

■ We first consider appellant's argument that the burden was on the respondent to plead and prove, as a defense to appellant's cross-bill for divorce, that she could not comprehend the difference between right and wrong at the time she had committed the indignities as found by the trial court. (T. 193–195). While it is true that the burden of proving insanity of one of the parties to a divorce action is on the party asserting it (Dunn v. Dunn, 240 Mo.App. 87, 216 S.W.2d 141, 1. c. 143(6); Willis v. Willis, Mo.App., 274 S.W.2d 621, 1. c. 626), here, neither party pleaded that the respondent was insane. However, in divorce cases, the public welfare is at stake, and the state has an interest in the maintenance of the family relationship. (Crow v. Crow-Humphrey, 335 Mo. 636, 73 S.W.2d 807, 1. c. 811; Koslow v. Taylor, 356 Mo. 755, 203 S.W.2d 433, 1. c. 437; Heaven v. Heaven, Mo. App., 363 S.W.2d 33, 1. c. 39). It has been therefore held that, in a divorce action, insanity need not be pleaded affirmatively (Bethel v. Bethel, 181 Mo.App. 601, 164 S.W. 682, 684(3); Willis v. Willis, 274 S.W.2d 621, 1. c. 626). If evidence of insanity was received into evidence for any purpose, it should have been considered by the trial court for all purposes, provided

that proper legal steps had not been taken to restrict its use (28 Am.Jur. 254–255, Sec. 263–264). Here the trial court had not only a right, but also a duty, to minutely examine all evidence concerning the mental condition of respondent, and if the evidence, considered in its entirety, established that respondent was "insane" at the time she committed the indignities in question, then it made no difference who had the burden of proof on this issue. (Bethel v. Bethel, 181 Mo.App. 601, 1. c. 609, 164 S.W. 682; Miller v. Miller, 14 Mo.App. 418, 1. c. 428). We therefore rule this point against the appellant.

The only remaining assignment of error is that the trial court erred in dismissing appellant's cross-bill on the theory that respondent was not mentally able to avoid the conduct which constituted indignities against the appellant. This is a more difficult question to decide. Appellant contends that in order for respondent's indignities toward appellant to be legally excused, it must be shown, that at the time of the commission of said indignities, her mental condition must have been such that she was unable to differentiate between right and wrong.

This legal test has previously been applied by this court (Niedergerke v. Niedergerke, Mo.App., 271 S.W.2d 204, 1. c. 207 (3). It has also been accepted as a correct test in other appellate decisions of this state (Willis v. Willis, 274 S.W.2d 621, 1. c. 627(10), which case also held that if the "insanity" in question caused a person to act by force of an irresistible impulse generated by a diseased mind, then such acts were legally excused. These two legal tests, or rules, have long been universally applied to this problem. 19 A.L.R.2d 144, 151–155; Nelson on Divorce and Annulment (2nd Ed.) Vol. 1, Sec. 9.06.

But there is still another test, or rule, that was first applied by this court many years ago. In the landmark case of Bethel v. Bethel, 181 Mo.App. 601, 164 S.W. 682, St.L.C.A. 1914, the trial court found that

the husband had publicly and repeatedly charged his wife with adultery; that such charges were untrue, and that the wife was an honest, well-meaning woman. The trial court also found that the husband was in poor health, was a nervous wreck, and was not accountable for his words and actions against his wife. The appellate court ruled that this finding amounted to a finding of insanity, reasoning that divorces are granted because of the fault of a party and not for his or her misfortune. (Bethel v. Bethel, supra, l. c. 610, 164 S.W. 682).

This reasoning has much merit. Progressive thinkers in the judicial, medical, and sociological branches of our society have inched forward step by step, over the years, down the narrow and poorly defined road of mental illness, with its many shades of meaning and degree, and by their wisdom, perseverance, and tenacity, have changed legal thinking from the dark ages' concept, when a person afflicted with a mental illness was placed in the same category as a wild beast or was burned at the stake as a witch, to our present, modern day concept that mental disease is an illness which impairs mental health and which may or may not, depending on its severity, render an individual incapable of conforming his conduct to the modes of society.

Our legislature, in the recent enactment into law of Senate Bill 143, which bill is our new Criminal Responsibility Act (Chapter 552, Revised Statutes of Mo.), stated in Section 552.030(1), V.A.M.S. thereof, that "[a] person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect he did not know or appreciate the nature, quality, or wrongfulness of his conduct or *was incapable of conforming his conduct to the requirements of law*." (Emphasis ours.) Surely a partner to the marriage vows, "in sickness and in health, for better and for worse," is entitled to at least the same protection of the law as a person accused of crime. The vows of marriage would indeed be tied by a

frail thread if the inconvenience caused by the illness of one marriage partner gave a right of divorce to the other. (Thomason v. Thomason, Mo.App., 262 S.W.2d 349, l. c. 352(5)).

We, therefore, hold that if the greater weight of the credible evidence in this case established that respondent at the time of committing the indignities in question was suffering from a mental illness that rendered her incapable of avoiding the commission of those indignities which otherwise would have been grounds for divorce, then she was not legally accountable for such acts, and such indignities are not grounds for divorce. With this ruling in mind, we proceed to examine the evidence.

Appellant's allegations of indignities in his cross-bill are to the effect that respondent was completely introverted; that she would not communicate with appellant; that she failed and refused to make a home for appellant and their family; would not sit in the same room with him or eat her meals with the family; that she had no friends and refused to make friends or even speak to people of the community, and that she was fully and completely incapable of taking care of the family. Appellant's own testimony indicates that he took his wife to a psychiatrist about ten years before the divorce action was commenced; that she had been almost constantly under the care and treatment of a psychiatrist during that period; that, in appellant's opinion, her condition had never become better and, if anything, it was worse, and that every psychiatrist he had ever taken her to informed him that, in the doctor's opinion, respondent would not improve.

Respondent admitted that she did not speak to her husband the last year they lived together; that she is under the care of Dr. Chiasson in Columbia, Missouri, and that she sees the doctor, who is a psychiatrist, once a month; that she had been under Dr. Chiasson's treatment for

over two years; that prior to that time she had been treated by at least three other psychiatrists for a period of years; that she had been treated in Missouri Baptist Hospital for a nervous condition about ten years ago, and also treated in the Boone County Hospital for the same purpose; that although she had lived in Mexico, Missouri, for seventeen years, there was no one there whom she considered a friend. She testified that she and her psychiatrists had discussed her lack of cordiality with other people from time to time, and that her emotional problems and her lack of cordial relationships with others could be related. Dr. Haddock, a witness for appellant, who was a psychiatrist and had treated respondent from 1958 until 1960, testified that she had a paranoid condition, which was a feeling that people disliked her; that the condition was chronic and acute and not likely to improve, and had been more or less steady for many years.

Dr. Langford, a physician, testified that respondent did not communicate with other people in church or in the town of Mexico, and had not done so for a number of years; that she was withdrawn, and that it was difficult to communicate with her on a doctor-patient basis.

Reverend Father O'Sullivan, the parish priest, stated that he tried to visit with respondent, but that she would not speak to him and told him her problem was lack of communication and that she went around in circles. Other witnesses, including appellant, testified that respondent had more and more disassociated herself from family activities; that she stayed in seclusion; gave little concern to the needs of her husband and children, and showed a lack of concern and affection for her husband and children by her passive, withdrawn, and introverted attitude.

On the basis of this evidence the trial court denied a divorce to both respondent on her petition, and defendant on his cross-bill, reasoning that her acts were not in-tentionally done, and that as a matter of law, respondent was not responsible for her conduct, as she was mentally ill at the time such acts were committed.

A careful reading of the record indicates that there were ample facts on which the trial court could, and did, find that the indignities complained of by appellant occurred at a time when respondent was suffering from a mental illness that made her legally unaccountable for such actions. For the foregoing reasons, the judgment of the trial court should be affirmed.

It is so ordered.

RUDDY, P. J., and ANDERSON, J., concur.

WOLFE, J., not participating.